Sholiton Industries, Inc., appeals from a judgment of restitution granted in favor of Royal Arms Ltd. in the Montgomery County Court of Common Pleas. The trial court found that Royal Arms had properly given notice canceling a lease agreement at the conclusion of a second five-year term. Sholiton contends that the lease agreement, properly construed, granted them an additional third five year term and that, therefore, the trial court erred by granting judgment in Royal Arms's favor. We agree with the trial court, however, that both parties had the option of ending the lease at the conclusion of the second term. An inconsistency in the agreement created by the operation of three separate clauses had to be resolved by giving the parties the option to terminate the lease rather than by interpreting the lease to run into perpetuity. As a consequence, we affirm the judgment below.
 I.
On March 16, 1989, Sholiton and Royal Arms entered into a written lease agreement. According to the terms of the lease, Royal Arms provided three laundry rooms for Sholiton in its apartment complex on Grafton Avenue in Dayton, Ohio, known as Executive House Apartments. Sholiton used those rooms as a place to install its own coin-operated washing and drying machines for use by the tenants of Executive House. As rent, Sholiton paid Royal Arms fifty per cent of its gross profits from the machines every quarter. The lease agreement was based on a standard form drafted by Sholiton with spaces provided to type in various operative terms.
The first lease term began, according to the agreement, when the washing and drying machines were installed. In fact, the machines had already been installed almost one year before the agreement was signed, on April 28, 1988. The lease, therefore, ran from that date forward.
The lease operated in sequential terms of five years. After the first five years, Sholiton held a unilateral option to renew for a second term. After the second term ended, the lease term renewed automatically, unless either party gave notice of its desire to terminate the lease between 120 and 90 days before the lease term expired. The provision in the lease that outlined these terms read as follows:
 TO HAVE AND TO HOLD the above described space for a term of five (5) years with an option on the part of lessee for an additional term of five (5) years which shall be automatically renewed for said five year period unless lessee submits notice of other intent to lessor by certified mail not more than 120 days nor less than ninety (90) days prior to the expiration of said term. If lessee exercises his first option said lease shall thereafter be automatically renewed for five (5) year periods unless either party gives not more than 120 days nor less than ninety (90) days notice prior to the expiration of any extension. Initial term provided for herein shall commence upon the installation of the washing and drying machines. Notification of the date of installation be given by lessee to lessor certified mail with return receipt.
 Although the first lease term began with the installation of the equipment on April 28, 1988, Sholiton did not give notice of the date of installation as required by this clause until May 4, 1993, over five years later. Nevertheless, both parties accept that the initial lease term began in April, 1998.
Another provision in the lease gave Sholiton an additional five-year term plus a unilateral option to renew for an additional five years if, at any point, both parties agreed that more than fifty per cent of the washing and drying equipment should be replaced. The ten-year period ran from the installation of the new equipment. That provision read as follows:
 7) If the parties agree that lessee should replace more than fifty percent of the equipment the lease term shall be renewed for the initial term and any options as provided from the installation date. Notification of the date of installation shall be given by lessee to lessor certified mail with return receipt.
 The parties also created an addendum to the lease agreement. According to the addendum, Sholiton agreed to replace all the washers and dryers and to redecorate the laundry rooms every five years from the commencement of the original term. The addendum stated:
 A. Sholiton Industries, Inc. agrees that every five years from the commencement date of the original term they will replace all laundry washers and dryers with brand new commercial laundry washers and dryers and re-decorate the laundry rooms in Executive House Apartments. This redecoration shall be approximately the same as was done in 1988 or as shall be mutually agreed to by the parties to the Lease.
 On April 5, 1993, Royal Arms sent Sholiton a letter giving notice of its intention to terminate the lease agreement as of July 25, 1993. Sholiton then notified Royal Arms that the first term expired on April 27, 1993. Royal Arms did not further pursue its intention to terminate the lease because, under the agreement, Sholiton held an option to renew the lease for a second five-year term, which it exercised.
On September 3, 1993, Sholiton replaced all of the laundry equipment that it maintained at Executive House. Sholiton gave notice of the installation date by certified mail on March 25, 1998.
On December 29, 1997, Royal Arms gave notice to Sholiton that it intended to terminate the lease as of April 27, 1998. Royal Arms informed Sholiton that it was exercising its option to terminate the lease after the expiration of the second term. Sholiton, however, refused to honor the termination request. According to Sholiton, under paragraph seven of the lease agreement, the installation of the new equipment in September, 1993 began a new five-year term. Because, under paragraph seven, installation renewed the "initial term and any options," Sholiton maintained that the lease term did not expire until September, 1998. It further maintained that its unilateral option to renew the lease after five years was revived and, therefore, Sholiton held the right of possession until at least September, 2003.
On April 21, 1998, Sholiton initiated the instant case by filing a complaint for a declaratory judgment concerning its rights under the lease agreement. Royal Arms filed a counterclaim asking for judgment in forcible entry and detainer and damages. The matter was set for trial before a magistrate on July 10, 1998. On September 4, 1998, the magistrate issued a decision granting Royal Arms a writ of restitution. The magistrate found that Sholiton's performance in accordance with the addendum, installing new washers and dryers, did not trigger the provisions of paragraph seven renewing the initial term and Sholiton's unilateral right to renew. He held that the two provisions were intended to operate separately. Thus, according to the magistrate's construction, Royal Arms had the right to terminate the agreement at the conclusion of the second term.
On July 20, 1998, Sholiton sent Royal Arms a check for $1,253, fifty per cent of the moneys it had collected during the second quarter — April, May, and June, 1998. Royal Arms cashed the check on July 30. On August 19, 1998, Sholiton filed a motion asking the magistrate to consider this new evidence. Sholiton argued that the acceptance waived Royal Arms's notice of eviction. The magistrate overruled the motion in his decision of September 4.
On September 18, 1998, Sholiton filed its objections to the magistrate's report together with a motion for a new trial based on the evidence of the rent payments. On September 28, the trial court denied Sholiton's motion for a new trial. Then, on September 30, it entered an order overruling Sholiton's objections and adopting the magistrate's decision. Accordingly, on October 15, 1998, the court issued a writ of restitution. The court also entered judgment in favor of Royal Arms on Sholiton's complaint for a declaratory judgment. All remaining claims for damages were continued for decision at a later date.
Sholiton, which retains present possession of the premises, has timely appealed from the trial court's judgment.
 II.
We will take Sholiton's fourth and fifth assignments of error first because these assignments go to the heart of Sholiton's appeal, which lies in whether the trial court erred in its construction of the lease agreement. The fourth and fifth assignments of error are as follows:
 IV. THE TRIAL COURT ERRED IN FAILING TO APPLY THE RULES OF CONSTRUCTION TO THE LEASE LANGUAGE AS NECESSARY TO GIVE THE LEASE AGREEMENT FULL FORCE AND EFFECT.
 V. THE TRIAL COURT ERRED IN FAILING TO FIND THAT PLAINTIFF COMPLIED WITH ALL MATERIAL TERMS OF THE LEASE AGREEMENT WHICH AGREEMENT WAS EFFECTIVELY RENEWED THROUGH SEPTEMBER 2003.
 We consider these assignments jointly, moreover, because Sholiton, in its appellate brief, supports both assignments with the same argument.
Here, the essential question raised by Sholiton is whether, under a proper construction of the three contract clauses at issue, the installation of new equipment in 1993 renewed the lease for five years from that date together with Sholiton's unilateral option to renew at the conclusion of that five years. Sholiton argues that a plain-language reading of the agreement supports this construction of the contract.
Where there is no relevant factual dispute, the construction of written contracts and instruments of conveyance is a question of law. See Quill v. R.A. Investment Corp. (1997), 124 Ohio App.3d 653,661. Appellate review of a trial court's interpretation, therefore, is conducted de novo. Generally, words in a written agreement will be given their plain ordinary meaning. However, it may be necessary to stray from a plain reading of the agreements terms if such a reading produces an absurd result. SeeOlmstead v. Lumbermens Mut. Ins. Co. (1970), 22 Ohio St.2d 212,216. Likewise, words in an agreement may be interpreted differently if the agreement itself evidences some other meaning. See Zimmerman v. Eagle Mtge. Corp. (1996), 110 Ohio App.3d 762,775.
According to the construction advanced by Sholiton, the parties agreed through the addendum that Sholiton would replace all the laundry equipment every five years ("Sholiton Industries, Inc. agrees that every five years from the commencement date of the original term they will replace all laundry washers and dryers * * *.") The addendum then, according to Sholiton, triggered the terms of paragraph seven, for which mutual agreement that the equipment be replaced was a condition precedent ("If the parties agree that lessee should replace more than fifty percent of the equipment"). According to paragraph seven, upon the agreement of the parties, the installation of new equipment renewed the lease term and "any options" as of the installation date ("[T]he lease term shall be renewed for the initial term and any options as provided from the installation date."). Referring back, then, to the habendum clause of the lease — beginning "to have and to hold" — the initial lease term ran for five years, and Sholiton had a unilateral option to renew the lease for an additional five years at the conclusion of the initial tem ("for a term of five (5) years with an option on the part of lessee for an additional term of five (5) years"). Thus, according to this interpretation, the installation of new machines in September, 1993 renewed the lease for five years, or until September, 1998, and Sholiton had the right to renew the lease after that for five more years, or until September, 2003.
The magistrate noted, however, that, under Sholiton's reading of the agreement, Royal Arms could not terminate the lease in 2003 any more than in 1998. Indeed, as the magistrate explained, Sholiton could not terminate the lease either. The magistrate wrote as follows:
 It should be noted that if you follow Plaintiff's interpretation, then every five years the Plaintiff is required to replace the equipment which will restart the initial term of five years, and neither party has the right to terminate the lease. There would be no renewal option, but the initial term of five years would be renewed each time the equipment is replaced. The lease would continue forever or until terminated by mutual agreement or breach.
 Thus, if the installation of new equipment in compliance with the addendum triggered a renewal of the initial lease term the lease would run into perpetuity.
The magistrate's logic here is unavoidable. According to the terms of the addendum, Sholiton agreed to replace all of the laundry equipment every five years. If that replacement triggered the renewal provision of paragraph seven, as Sholiton claims, the lease would automatically renew every five years. Sholiton could not avoid renewal by failing to install new equipment, because that failure would constitute a breach of the agreement. Thus, as the magistrate recognized, the lease would continue until the parties mutually agreed otherwise, effecting a novation, or one party breached. Understandably, the magistrate was reluctant to accept a plain-language reading that would lead to such an absurd result.
If the parties had intended to create a lease that renewed itself every five years forever, they could certainly have written a clause to that effect. Here, however, the effect was created by the inter-operation of three separate clauses. We find it impossible to imagine that the parties intended when they drafted this agreement to create a perpetual lease through this intricate operation of disparate clauses. One of the clauses must give way to avoid the manifest absurdity of the suggested reading.
As an alternative to this problematic interpretation, the magistrate held that paragraph seven and the addendum operate independently of each other. Thus, the addendum itself, he found, was not an agreement of the sort that would satisfy the condition precedent for renewal provided in paragraph seven. He found, instead, that paragraph seven required a separate agreement between the parties that new equipment should be installed. Thus, Royal Arms would not be obligated to lease to Sholiton for another ten year period without arriving at a separate agreement to that effect before each such period. When Sholiton installed new laundry equipment in 1993, the magistrate found, it was not acting pursuant to a recent agreement with Royal Arms, but was fulfilling its obligation under the addendum. Accordingly, the installation in 1993 did not trigger a renewal of the initial lease term.
We agree with the magistrate that this was the proper construction of the lease agreement. Under this reading, the meaning of the phrase "if the parties agree" is only slightly modified to exclude the agreement that the parties already reached and incorporated into the lease. This meaning, unlike the one advanced by Sholiton, is reasonably consistent with the other terms of the lease agreement. It does not, moreover, produce an absurd result.
We recognize that the consequence of this interpretation is that the addendum effectively superseded the provisions of paragraph seven. Because Sholiton agreed to replace all equipment every five years automatically, it was unlikely the Royal Arms would ever enter into a separate agreement with Sholiton that it should replace more than fifty per cent of the equipment. Nevertheless, this result is consistent with the established canons of construction. The rule is that "[a]lthough effect should be given to both the printed and typed portions of a lease whenever possible, in the event of an inconsistency between the two, the typed portion will prevail." 49 American Jurisprudence 2d (1995) 84, Landlord and Tenant, Section 46. The reasoning underlying this rule is "that the written or typed words are the immediate language and terms selected by the parties themselves for the expression of their meaning, while the printed form is intended for general use without reference to particular objects and aims." Id. Here, the addendum was a typed addition to the printed lease, joined to the lease by the direct agreement of the parties. Thus, it was the more immediate expression of the parties meaning. Given the incompatibility of the addendum with paragraph seven, the terms of the former must prevail.
Other canons of construction also persuade us of the validity of the trial court's decision. It is said that "where two clause of a lease are repugnant to each other and cannot stand together, the first will prevail and the latter will fall." 49 American Jurisprudence 2d (1995) 84, Landlord and Tenant, Section 45. Thus, in a lease that first granted the tenant the right to assign and prohibited the landlord from unreasonably withholding consent, a later provision granting the landlord an unconditional right to terminate the lease upon assignment would fail because it was inconsistent with the former. Petrou v. Wilder (Fla.App. 1990),557 So.2d 617, 618. So here, we have a habendum clause that granted both parties the right to terminate the lease after ten years. Under the interpretation advanced by Sholiton, two subsequent provisions in the agreement, operating in conjunction, would entirely take that right away. If we construed the lease agreement in that way, the canons of construction would require that the former provision, granting the right, stand and the latter provisions, taking that right away, fall. The result, therefore, would be the same as under the magistrate's interpretation. In any event, we prefer the interpretation that avoids creating a repugnancy between the habendum clause and subsequent clauses in the lease.
Finally, the rule in Ohio is that the party who prepares a lease, even when that party is the lessee, should have the lease strictly construed against him. 65 Ohio Jurisprudence 3d (1995) 116-117, Landlord and Tenant, Section 95. Here, Sholiton prepared the lease agreement. As a consequence it bears responsibility for any ambiguity and inconsistency in the provisions of the agreement. To the extent that the magistrate resolved those questions against Sholiton and in favor of Royal Arms, that approach was consistent with the established canons of construction.
For the foregoing reasons, appellant's fourth and fifth assignments of error are overruled.
 III.
We return then to Sholiton's first assignment of error. Therein, Sholiton claims:
 I. THE TRIAL COURT ERRED IN OVERRULING PLAINTIFF'S MOTION TO RECONSIDER ADDITIONAL AND NEW EVIDENCE RELATING TO DEFENDANT'S ACCEPTANCE OF RENT WHICH THEREBY INVALIDATED THE NOTICE TO VACATE AND THUS DEPRIVED THE COURT OF JURISDICTION TO PROCEED.
 Under R.C. 1923.04, a landlord is required to give his tenant at least three days notice before beginning an action in forcible entry and detainer. Because adequate notice under the statute is a condition precedent to a forcible entry and detainer action, it is reversible error for a trial court to adjudge the merits of a case if no notice has been given. See Shimko v. Marks (1993), 91 Ohio App.3d 458, 463. Similarly, an action in forcible entry and detainer cannot be maintained if the landlord has waived his notice to the tenant. Id.
The generally accepted rule in Ohio is that, by acceptingfuture rent payments after serving a notice to vacate, a landlord waives the notice as a matter of law, as such acceptance is inconsistent with the intent to evict. Associated Estates Corp.v. Bartell (1985), 24 Ohio App.3d 6, 9; Presidential Park Apts. v.Colston (App. 1980), 17 O.O.3d 220, 221. Relying on these authorities, Sholiton claims that Royal Arms, by accepting a rent payment after it had given notice to vacate, waived the notice required by statute and thus could not maintain its action for restitution. Sholiton's argument fails, however, because, by its own account, the check that it sent in July, 1998 was for rent from April, May, and June of 1998. A payment by a tenant is only a "future rent payment" when it is for a period of occupancy after the date of the landlord's acceptance. Sheridan Manor Apartmentsv. Carter (Dec. 22, 1992), Lawrence App No. 92CA4, unreported, at 2. Rent paid for a period of occupancy before the landlord's acceptance of payment is past due. The generally accepted rule is that a landlord's acceptance of past due rent does not waive the statutory three-day notice to vacate the premises. Graham v.Pavarini (1983), 9 Ohio App.3d 89, 92; Julian Invests., Inc. v.Dudley (Feb. 12, 1999), Greene App. No. 98-CA-85, unreported, at 3.
The logic underlying the waiver rule is that: "[a]fter serving a notice to vacate, it is inconsistent for a landlord to accept and retain payments in advance." Colston, 17 O.O.3d at 221. When a landlord accepts a rent check for any period after the date of acceptance, he indicates his willingness to permit the tenant to stay through that period. Such a willingness is inconsistent with a notice to vacate and thus effects a waiver. This inconsistency does not extend to those situations where rent is accepted for obligations already incurred. Id.
There is, in fact, some persuasive authority to suggest that a landlord may not accept rent for any period that falls after the notice to vacate. See Schmidt v. Hummell (1947), 81 Ohio App. 167,170 ("[I]t is manifest that if [a landlord] accepted payment of rent, as such, for the period covered in his action and by his notice to leave the premises, he could not be heard to say that he was entitled to their possession.") However, the weight of recent authority in Ohio supports the landlord's right to collect rent after the notice to vacate, as long as it is taken as payment for obligations past due. Graham, 9 Ohio App.3d at 92; MeccaManagement, Inc. v. Gouse (Nov. 21, 1997), Lucas App. No. L-97-1185, unreported, at 2; see also Bristol Court v. Jones
(Sept. 29, 1994), Pike App. No. 93-CA-520, unreported, at 2 ("Nothing * * * prevents a landlord from accepting payments for rent past due."). A tenant will continue to incur obligations for rent when he occupies a premises after the notice to vacate is given. Julian Invests., supra, at 3. Thus, it is not considered inconsistent for a landlord to collect upon such obligations after they become past due and still insist on his right to present possession. See id.
Here, when Royal Arms accepted payment, Sholiton had already remained on the disputed premises for two months after the date set the notice to vacate. Although the lease terminated in April, Sholiton would still have incurred some obligation to pay rent for that period of holdover. See Julian Invests., supra, at 3. Royal Arms, therefore, could accept payment for that time without waiving its notice to vacate the premises. Accordingly, the trial court did not err in overruling Sholiton's motions for a new hearing to consider this evidence. As a matter of law, the acceptance of the past due rent payment in July had no effect on the outcome of the case.
Appellant's first assignment of error is overruled.
 IV.
We will consider Sholiton's third assignment of error next. As its third assignment of error, Sholiton raises the following:
 III. THE TRIAL COURT ERRED BY ADOPTING THE MAGISTRATE'S DECISION DECLARING THE RIGHTS OF THE PARTIES TO THE LEASE AGREEMENT IN A SUMMARY PROCEEDING, THEREBY RENDERING MOOT THE PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT.
 The claim here is, essentially, that the trial court erred by ordering a hearing on Royal Arms' action in forcible entry and detainer and then postponing consideration of the parties' other claims, including Sholiton's declaratory judgment action. Sholiton also argues that the court erred by rendering an unfavorable judgment on its declaratory judgment claim after the forcible entry action was decided against it.
Forcible entry and detainer is a summary proceeding authorized by statute, R.C. 1923.01 et sub. The purpose of the action is to provide an extraordinary and speedy method for the recovery of possession of real estate. Cuyahoga MetropolitanHousing Authority v. Jackson (1981), 67 Ohio St.2d 129, 131. Consistent with the purposes of the statute, it is common for trial courts to bifurcate these cases when there are other claims or counterclaims and hear the forcible entry and detainer action first. See, e.g., Seventh Urban, Inc. v. University CircleProperty Development, Inc., (Ohio 1981) 67 Ohio St.2d 19, 20;Statler Arms, Inc. v. APCOA, Inc. (C.P. 1997), 92 Ohio Misc.2d 45,67; Pete's Grill, Inc. v. Entercorp (Dec. 10, 1992), Cuyahoga App. No. 61547, unreported, at 2; Olsieski v. Synovetz (July 18, 1990), Lorain App. No. 89CA004691, unreported, at 2. Judgment on the forcible entry and detainer action is, then, immediately appealable as arising from a special proceeding, Skillman v.Browne (1990), 68 Ohio App.3d 615, 619, thus the jurisdictional basis for the instant appeal. A trial court's determinations of other, interlocutory matters would not be appealable until merged into a final judgment. See Estate of Quilling v. Beeber Pharmacy,Inc. (Dec. 30, 1998), Montgomery App. No. 17487, unreported.
The decision over whether to bifurcate a proceeding is a matter committed to the sound discretion of a trial court. Sheetsv. Norfolk S. Corp. (1996), 109 Ohio App.3d 278, 288, citingHeidbreder v. Northampton Twp. Trustees (1979), 64 Ohio App.2d 95. Because the statutory forcible entry and detainer action is supposed to provide a speedy remedy, bifurcation is almost always proper in such cases. We see no abuse of discretion here.
In any event, Sholiton does not explain how it was prejudiced by the decision to bifurcate. The "sole ultimate issue" in a forcible entry and detainer action is the right to present possession. Fodor v. First Natl. Supermarkets, Inc., (1992),63 Ohio St.3d 489, 494. Sholiton's declaratory judgment action concerned the same issue: who held the right of possession under the lease agreement. Thus, in deciding the question of present possession, the magistrate decided Sholiton's claims. Sholiton does not explain what evidence relating to its claims it was prevented from presenting by the bifurcation order, if any, or how that evidence would have been relevant to what was essentially a question of law.
For these same reasons, it does not appear that the trial court erred in granting judgment in favor of Royal Arms on Sholiton's complaint. However, as that determination was not part of a final and appealable order, that question is not properly before us.
Appellant's third assignment of error is, accordingly, overruled.
 V.
In its second assignment of error, Sholiton asserts:
 II. THE TRIAL COURT ERRED IN ADOPTING THE MAGISTRATE'S DECISION WITHOUT EVEN REVIEWING ANY TESTIMONY OR DOCUMENTARY EVIDENCE PRESENTED AT THE HEARING ON RESTITUTION.
 With this assignment, Sholiton claims that the trial court failed to conduct the necessary independent review of the magistrate's decision before adopting that decision and overruling Sholiton's objections.
The factual history underlying this assignment of error is as follows. The magistrate issued his decision on September 4, 1998. The decision indicated that no transcript of the hearing had been prepared, but a tape was available. On September 18, Sholiton filed its objections to the magistrate's decision together with a praecipe asking that a transcript of the hearing be prepared. On September 30, the trial judge adopted the magistrate's decision and entered judgment in favor of Royal Arms.
A transcript of the hearing was not prepared until October 28, 1998. Then it appeared that only the first half of the hearing was actually recorded. That part of the proceeding during which Sholiton presented its evidence was, evidently, not recorded. Sholiton has remedied that failure by submitting a statement of the evidence and proceedings pursuant to App.R. 9(C). Sholiton notes, however, that the trial judge could not have independently reviewed all of the evidence given during the hearing because a record did not exist for a portion of that evidence.
Sholiton's attorney has also asserted in the appellant's brief that, subsequent to the trial court's judgment granting restitution, he found the entire case file was still stored in the magistrate's office. As a consequence, he concludes that the trial court did not review the record before adopting the magistrate's decision.
Through a number of cases in recent years, this court has addressed the trial court's duty to independently review a magistrate's decision and any party's objections to that decision.Inman v. Inman (1995), 101 Ohio App.3d 115, 118; Cecil v. Beam
(Mar. 28, 1997), Montgomery App. No. 16210, unreported; Birt v.Birt (Dec. 21, 1994), Miami App. No. 94-CA-32, unreported; Learv. Brown (Nov. 5, 1993), Miami App. No. 93-CA-17, unreported. The rule developed in those cases is that the appellant must overcome the presumption of regularity as to the trial court proceedings and must "make an affirmative demonstration that the trial court did not conduct independent analysis." Cecil, supra, at 5, quoting Inman, 101 Ohio App.3d at 119. The appellant must also make his case by pointing to evidence within the record. SeeInman, 101 Ohio App.3d at 119.
It should be noted, however, that Civ.R. 53(E) governing review of magistrates' decisions has been amended several times in the last decade. A court may now adopt a magistrate's decision, if no objections are filed, as long as there is no error of law on the face of the decision. Civ.R. 53(E)(4)(a). Unless an issue has been raised by a specific objection, a trial court cannot err in that regard unless there is an obvious error. Divens v. Divens
(Oct. 2, 1998), Clark App. No. 97CA112, unreported, at 2. When objections are raised, it remains true that "[t]he trial court, as the ultimate finder of fact, must make its own factual determinations through an independent analysis of the issues and should not adopt the findings of the referee unless the trial court fully agrees with them." Inman, 101 Ohio App.3d at 118. Nevertheless, it is not requisite that a trial court independently review the entire record before adopting a magistrate's decision. It is only necessary that it conduct an independent review of those facts relevant to any objections filed by the parties.
Sholiton's objections below were threefold. The company objected, first, to the magistrate's interpretation of the lease agreement; second, to the magistrate's determination that Royal Arms could not waive notice by accepting past-due rent; and, third, to the bifurcation of the trial proceedings. As to any of these issues, there were no relevant factual disputes. Thus, it was not necessary for the trial court to review the record of the hearing in order to independently consider the issues raised in Sholiton's objections.
The magistrate arrived at a construction of the lease agreement by reference only to the four corners of the document and to factual matters that were not seriously in dispute, such as the 1988 and 1993 installation dates. A court should not look beyond the four corners of an agreement unless some necessity arises that compels it to do otherwise. Natl. Union Fire Ins. Co.of Pittsburgh, Pa. v. Shane Shane Co., L.P.A. (1992), 78 Ohio App.3d 765,769. We have already affirmed that the magistrate's interpretation of the agreement was correct, taking into account the provisions of the agreement and the established canons of construction. Sholiton did not in its objections below point to any parol evidence or evidence aliunde that would have produced a different result, nor does it do so on appeal. As a consequence, we cannot conclude that the trial court erred by not reviewing the evidence presented at the hearing.
The trial court, however, was required to review the lease agreement itself. Sholiton suggests in its brief that the trial court failed to conduct even that level of independent review, based on its attorney's discovery of the complete file in the magistrate's office. That discovery, however, is not a matter within the record on appeal. Sholiton points to nothing in the record that would cause us to infer that the trial court failed to conduct the independent review necessary before it adopted the magistrate's report. Thus, we must presume the regularity of the proceedings below. See Cecil, supra, at 5.
As we noted in Cecil, we do not condone disregard for the trial court's obligation to conduct an independent review. Id.
Nevertheless, appellate procedure places the burden on appellant to show in the record that the trial court failed in its duty. Upon the record before us, we are unable to find that the trial court erred. Accordingly, we overrule appellant's second assignment of error.
 VI.
Having overruled all five of appellant's assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
. . . . . . . . . . . .
WOLFF, J., and KERNS, J., concur.
(Honorable Joseph D. Kerns, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).
Copies mailed to:
 Gregory T. Engler C. Bernard Brush Hon. Barbara P. Gorman