INMAN, Appellee,

v.

INMAN, Appellant.

[Cite as *Inman v. Inman* (1995), 101 Ohio App.3d 115.]

Court of Appeals of Ohio,
Second District, Miami County.

No. 94 CA 27.

Decided Feb. 1, 1995.

*Stephen E. Klein,* for appellee.

*Perry J. Pelaez,* for appellant.

WOLFF, Judge.

Heidi Sue Inman appeals from the judgment of the Miami County Common Pleas Court, which awarded custody of Donald and Danielle Inman to Jeffrey Inman.

Heidi and Jeffrey Inman were married on November 5, 1985, in Miami County, Ohio. Donald and Danielle were born as issue of this marriage. During the marriage, Mr. and Mrs. Inman moved to Kansas. On May 10, 1991, they were granted a divorce by a Kansas court. Before the divorce proceedings were initiated, Mr. Inman moved back to Miami County, Ohio, and he still lives there. On June 14, 1992, through an agreed entry, the Inman's foreign decree of divorce was registered in Miami County.

The original divorce decree awarded custody of both children to Mrs. Inman. She and the children lived in Kansas until January 1992, when they moved back to Miami County. On May 11, 1992, Mr. Inman filed a motion for change of custody in the Miami County Common Pleas Court, seeking custody of both Donald and Danielle.

In June 1992, Mrs. Inman filed a motion for a temporary restraining order with an affidavit accusing Mr. Inman of sexually abusing the children, and the motion was granted. However, in July 1992, the order was terminated and visitation was granted to Mr. Inman pursuant to his affidavit and his motion to terminate the restraining order.

The trial court appointed a guardian *ad litem* for Danielle pursuant to R.C. 3109.04(B)(2)(a). The trial court also ordered that psychological evaluations be conducted of Mr. and Mrs. Inman and the children.

An evidentiary hearing was conducted by a referee, and the referee filed his report and recommendation on February 4, 1994. The referee recommended that custody of Danielle and Donald be awarded to Mr. Inman. Mrs. Inman requested a transcript of the proceedings, and she was granted leave to file her objections to the report within fourteen days of the date the transcript was filed. On April 14, 1994, Mrs. Inman filed a twenty-eight-page set of detailed objections to the referee's report. After obtaining an extension of time to respond, Mr. Inman filed a sixteen-page response on May 16, 1994. The next day, May 17, 1994, the trial court filed a "Journal Entry" adopting the report and recommendations of the referee in their entirety.

Mrs. Inman filed a timely notice of appeal. Simultaneously, she filed a "Motion Concerning Appealable Order," in which she moved this court to determine whether the trial court's journal entry was a final appealable order. We held that the journal entry was a final appealable order and that the issue of whether the judgment was erroneous because of the paucity of the entry was a matter subject to appellate review.

Mrs. Inman asserts eleven assignments of error. Due to the substantial similarity of the issues involved, the first two assignments of error will be considered together:

"1. The trial court erred by failing to rule on the objections of the appellant and by failing to enter a judgment as required by Civil Rule 53(E)(5).

"2. The trial court erred when it adopted the report and recommendation of the referee without reviewing the transcript even though objections were filed based on the manifest weight of the evidence."

The thrust of Mrs. Inman's argument is that the trial court failed to conduct an adequate review of the referee's report and to enter its own independent judgment. The trial court's journal entry reads, in its entirety, as follows:

"This Court's Referee having filed his report with regard to this matter, the Court in reviewing the report and any objections timely filed thereto, does hereby approve and adopt such report, and incorporates in this Journal Entry the facts and recommendation of such report as though fully re-written.

"It is so ordered."

Civ.R. 53(E)(5) requires a trial court to "enter its own judgment on the issues submitted for action and report by the referee." In entering its own judgment, the trial court must conduct an independent analysis of the issues considered by the referee. Civ.R. 53(E)(5). The Supreme Court of Ohio has described the roles of the referee and the trial court:

"The findings of fact, conclusions of law, and other rulings of a referee before and during trial are all subject to the independent review of the trial judge. Thus, a referee's oversight of an issue or issues, even an entire trial, is not a substitute for the judicial functions but only an aid to them. A trial judge who fails to undertake a thorough independent review of the referee's report violates the letter and spirit of Civ.R. 53, and we caution against the practice of adopting referee's reports as a matter of course, especially where a referee has presided over an entire trial." *Hartt v. Munobe* (1993), 67 Ohio St.3d 3, 6, 615 N.E.2d 617, 620.

The trial court does not sit in the position of a reviewing court when reviewing the referee's report; rather, the trial court must conduct a *de novo* review of the facts and conclusions contained in the report. *DeSantis v. Soller* (1990), 70 Ohio App.3d 226, 232, 590 N.E.2d 886, 890–891. The trial court, as the ultimate finder of fact, must make its own factual determinations through an independent analysis of the issues and should not adopt the findings of the referee unless the trial court fully agrees with them. *Id.* at 233, 590 N.E.2d at 891; see, also, *State v. Patton* (Oct. 7, 1993), Montgomery App. No. 13929, unreported, 1993 WL 393634. The court's role is to determine whether the referee has properly determined the factual issues and appropriately applied the law, and, where the referee has failed to do so, the trial court must substitute its judgment for that of the referee. *Coronet Ins. Co. v. Richards* (1991), 76 Ohio App.3d 578, 585, 602 N.E.2d 735, 739–740; *In re Lucas Health Care Facilities, Inc.* (Feb. 1, 1994), Franklin App. No. 93APE09–1286, unreported, 1994 WL 30933.

We have previously held that the trial court's judgment entry need not address specific objections and that nothing in Civ.R. 53 prohibits the court from adopting the referee's findings in their entirety. *Galley v. Galley* (May 18, 1994), Miami App. Nos. 93–CA–31 and 93–CA–32, unreported, 1994 WL 191431; *Patton, supra.* See, also, *Natl. Mtge. Co. v. Brown* (May 11, 1993), Franklin App. No. 92AP–847, unreported, 1993 WL 169083 ("Civ.R. 53 does not require a court to include its independent analysis in its judgment order adopting the referee's report and recommendation.").

In most cases, where the trial court's entry has adopted the referee's report, we have presumed that the court conducted the proper independent analysis. See *Birt v. Birt* (Dec. 21, 1994), Miami App. No. 94–CA–32, unreported, 1994 WL 718310; *Patton, supra.* However, where the record has affirmatively demonstrated that the trial court did not conduct a proper independent analysis prior to adopting the referee's report, we have reversed the trial court's judgment and ordered the court to comply with the dictates of Civ.R. 53. See *Lear v. Brown* (Nov. 5, 1993), Miami App. No. 93–CA–17, unreported, 1993 WL 452010.

Thus, in order to prevail on her first two assignments of error, Mrs. Inman must make an affirmative demonstration that the trial court did not conduct an independent analysis of the issues raised at the evidentiary hearing before the referee. Initially, Mrs. Inman contends that the court failed to rule even upon her objections to the referee's report. As quoted *supra*, the court's journal entry stated that the court reviewed "any objections," but it does not expressly rule on the objections. While the better practice would be to explicitly state the court's ruling on the objections, it can be fairly inferred from the entry that the objections were overruled. We were willing to so interpret an identical entry in *Birt, supra*.

However, several questions are raised by the language of the court's journal entry. The reference to "any objections timely filed" implies that the court's journal entry is a form decision used regardless of whether objections have been filed in a particular case. This same form was filed as a journal entry in both *Birt, supra*, and *Lear, supra*. While this fact by itself is not an affirmative demonstration that the trial court has "rubber-stamped" the referee's report, it does raise an inference that the court has adopted "the practice of adopting referee's reports as a matter of course"—a practice expressly discouraged by the Supreme Court. *Hartt, supra*.

A further indication that the trial court did not conduct an independent analysis of the issues tried before the referee is the speed with which the judgment was entered. Twenty-five hours after Mr. Inman responded to Mrs. Inman's objections, the trial court filed its entry adopting the referee's report and recommendations. The report was twenty pages, the objections were twenty-eight pages, the response to the objections was sixteen pages, and the transcript of the hearing was one hundred eighty pages. While we applaud prompt decisions by the trial court, it strains credulity to believe that a thorough, independent evaluation of that much material could be conducted in so short a period of time.

Mrs. Inman also argues that, because one of her objections was based upon the manifest weight of the evidence, the trial court was required to review the transcript of the proceedings, and she claims that the court did not do so. This court held in *In re Moorehead* (1991), 75 Ohio App.3d 711, 720, 600 N.E.2d 778, 783–784, that the trial court must review the transcript of an evidentiary hearing when one of the parties raises an objection to the referee's report based upon the manifest weight of the evidence. The court's journal entry gives no indication that it reviewed the transcript. However, unless the record affirmatively demonstrates error, we must presume that the trial court fulfilled its duties. *Birt, supra*.

Mrs. Inman argues that "even a cursory review of the referee's report and findings of fact would instantaneously raise questions as to the admissibility of

evidence upon which the Referee's recommendation was premised." We agree. Several of the referee's findings of fact appear to be based upon inadmissible hearsay, *e.g.*, statements a police officer made to Mr. Inman and statements the Inman's niece made to her mother. Additionally, the referee based other findings upon the guardian *ad litem*'s report and Mr. Inman's voluntary lie detector test, and both of these items were arguably inadmissible. The trial court adopted these findings without any explanation. As the Marion County Court of Appeals noted:

"It must be recognized that the very nature of the duties of a judge often requires him to have knowledge of inadmissible evidence. Every time he makes a ruling determining evidence inadmissible, he has to know what the inadmissible evidence consists of, and if he is the fact finder, *he must eliminate same from his consideration in determining the facts.*" (Emphasis added.) *Hawkins v. Marion Corr. Inst.* (1990), 62 Ohio App.3d 863, 869, 577 N.E.2d 720, 723–724.

The duties of a judge when ruling on evidentiary issues are the same when he conducts his independent analysis of the issues considered by a referee as when he hears the evidence in the first instance. The trial court had the duty to independently evaluate the objections Mrs. Inman's counsel made to the evidence admitted at the evidentiary hearing and to determine whether the evidence was admissible.

The trial court has broad discretion in determining the admissibility of evidence; however, its decisions are subject to review by this court to determine whether the court abused its discretion. The trial court's cryptic entry adopting the referee's findings of fact gives us no indication of the court's reasoning, if any, in relying on apparently inadmissible evidence. Therefore, it is impossible for us to determine whether the court abused its discretion if, indeed, it actually exercised its discretion. Further, the court's failure to address the arguable errors which appear on the face of the referee's report lends additional support to Mrs. Inman's contention that the trial court failed to conduct an independent analysis of the issues referred to the referee.

From our consideration of the record, we can only conclude that Mrs. Inman has met her burden to overcome the presumption of regularity of the trial court's proceedings. The trial court made a decision on a complicated record consisting of two hundred forty-four pages, not including the reports which were admitted as exhibits at the hearing, within one day of receiving all of the materials. The trial court failed to address any of Mrs. Inman's objections, several of which appear to have merit. The trial court adopted the referee's findings in their entirety, including several findings based upon apparently inadmissible evidence. Finally, the court failed to provide this court with a sufficient record to determine whether the court abused its discretion in making evidentiary rulings, assuming,

*arguendo,* that the trial court actually exercised its discretion. Thus, we hold that the trial court failed to satisfy its duty to make and enter its own independent judgment when it adopted the referee's report.

Accordingly, the first and second assignments of error are sustained. The remaining assignments of error provide:

"3. The trial court erred when it found that a change of circumstances existed premised on the grounds that the parties have moved to Ohio, since such a circumstance is not a change as contemplated by R.C. 3109.04.

"4. The trial court erred when it permitted the guardian *ad litem* to file a report and further erred when it adopted the guardian's report as a basis for a change of custody, since R.C. 3109.04 does not authorize the guardian *ad litem* to file a report.

"5. The trial court erred when it admitted into evidence the guardian *ad litem*'s report which was submitted more than two months after the hearing, was never submitted to counsel, and was submitted in direct contravention to R.C. 2317.39.

"6. The trial court erred when it admitted into evidence a police report, in its entirety, which was replete with instances of inadmissible hearsay.

"7. The trial court erred when it relied on testimony concerning a polygraph examination and its results taken by appellee.

"8. The trial court erred when it permitted a seven-year-old minor child to testify who demonstrated no ability to receive and relate just impressions of fact in a truthful manner.

"9. The trial court erred when it approved a change of custody for the minor child Donald Inman where there was no evidence presented at trial [or] contained within the referee's report to support a change for this child.

"10. The trial court erred when it permitted a witness's hearsay testimony of matters which were not within the witness's personal knowledge.

"11. The trial court erred in determining the best interest of the child when it relied on factors pursuant to R.C. 3109.04(F)(1) which are unsupported by the trial court's findings of fact."

Our resolution of the first two assignments of error has rendered the remaining assignments of error moot.

The judgment of the trial court will be reversed. This matter will be remanded for the trial court to conduct a thorough analysis of the issues considered by the referee, in light of the objections filed by Mrs. Inman, and to

enter its own independent judgment on the submitted issues in accordance with Civ.R. 53.

*Judgment reversed and cause remanded.*

BROGAN, P.J., and FREDERICK N. YOUNG, J., concur.