OPINION
Plaintiff-appellant, Sharon Fite, and defendant-appellee, Timothy Fite, both appeal the decision of the Brown County Court of Common Pleas, Domestic Relations Division, granting a divorce between the parties and dividing their property. We affirm the trial court's decision.
 The parties were married on March 2, 1990. Two children were born during the marriage. On April 10, 1998, Sharon filed a complaint for divorce. Timothy filed an answer and a counterclaim. On August 3, 1998, a magistrate held the final divorce hearing. At that time, each party submitted a property statement and a trial memorandum.
The main dispute concerned the disposition of a National Bank and Trust joint savings account and the marital home located at 1250 Pride Hill Road, Hamersville, Brown County, Ohio. The parties agreed that the value of the savings account was $50,735.09, and that the fair market value of the Pride Hill Road home was $95,000. Timothy requested an offset of $73,000 in the equity of the marital home as his separate property.
Prior to the marriage, Timothy owned a home free and clear of any liens at 417 North Apple Street in Georgetown, Ohio. In addition, Timothy had four certificates of deposit and a savings account with National Bank and Trust. The savings account had a premarital balance of $12,846.14. After they married, the parties lived in the Apple Street home for four years. The deed to the Apple Street home remained solely in Timothy's name, but Timothy voluntarily added Sharon's name to his savings account.[1]
During the marriage, the parties decided to build the Pride Hill Road home on land that they had acquired as a gift from Sharon's grandmother, who transferred the deed to Sharon and Timothy with joint survivorship. To that end, Timothy cashed in his four certificates of deposit as they matured for a total of $33,000 and sold his Apple Street home for $28,000. Timothy deposited these funds into the joint savings account. In addition, Timothy made regular deposits throughout the marriage to the savings account from his earnings, and he deposited Sharon's earnings in their joint checking account. The entire cost of constructing the Pride Hill Road home came from funds in the joint savings account. The balance in the joint savings account never went below the premarital amount of $12,846.14.
In the August 25, 1998 decision, the magistrate, without making a finding as to the "traceability" of Timothy's separate property,[2] recommended that the $95,000 equity in the Pride Hill Road home and the $50,735.09 in the joint savings account be equally divided between the parties based upon certain factors.[3] On August 31, 1998, Timothy filed objections to the magistrate's decision, and Sharon filed her response to his objections on September 22, 1998. Timothy objected to the magistrate's finding that his premarital assets were all marital property and not his separate property because he had traced those assets to the construction cost of the Pride Hill Road home.
By its April 16, 1999 decision, the trial court adopted the magistrate's decision in part. The trial court found that Timothy had traced the $28,000 from the Apple Street home and the $33,000 from the certificates of deposit to the construction costs of the Pride Hill Road home and gave Timothy an offset of $61,000 in the equity of the home. The remaining $34,000 equity in the home was divided equally between the parties. The trial court also found that there was no evidence that traced Timothy's $12,846.14 in his savings account to the construction costs of the Pride Hill Road home. By its July 6, 1999 divorce decree, the trial court granted the divorce and awarded the Pride Hill Road home to Sharon subject to her paying Timothy $78,000 for his equity in the home and divided the $50,735.09 in the joint savings account equally between the parties. Sharon filed a timely appeal and Timothy filed a timely cross-appeal.
In her appeal, Sharon raises a single assignment of error:
 THE TRIAL COURT ERRED IN REVERSING OR MODIFYING THE DECISION OF THE COURT'S MAGISTRATE WHO HAD FOUND THAT THE PARTIES' JOINT SAVINGS ACCOUNT AS WELL AS THE ENTIRE VALUE OF THEIR MARITAL REAL ESTATE WERE ALL MARITAL ASSETS AND NOT DEFENDANT'S (APPELLEE/CROSS-APPELLANT) SEPARATE PROPERTY.
In her assignment of error, Sharon contends that Timothy's premarital assets were no longer his separate property and traceable after he deposited the funds into the joint savings account, and then withdrew funds from that account to pay for the construction of a jointly owned home. Sharon further claims that the trial judge made an inequitable distribution of the marital real estate.
In a divorce proceeding, the trial court must first determine what constitutes marital property and what constitutes separate property. R.C. 3105.171(B). Once the trial court has determined the status of the parties' property, the court must generally disburse a spouse's separate property to that spouse and equitably distribute the marital estate. R.C. 3105.171(B) and (D). We review the classification of property as marital or separate under a manifest weight of the evidence standard. Johnson v. Johnson
(Sept. 27, 1999), Warren App. No. CA99-01-001, unreported, at 7. The trial court's property award will not be reversed absent an abuse of discretion. Barkley v. Barkley (1997), 119 Ohio App.3d 155,159.
Under the manifest weight of the evidence standard, the factual findings of the trial court concerning the classification of property as marital or separate "are reviewed to determine whether they are supported by competent, credible evidence."Johnson at 7. This standard of review is highly deferential and even "some" competent, credible evidence is sufficient to sustain the judgment and prevent a reversal. Barkley,119 Ohio App.3d at 159. See, also, Sec. Pacific Natl. Bank v. Roulette (1986),24 Ohio St.3d 17, 20. Further, this standard rests on a strong presumption that a trial judge acts as the trier of fact and is in the best position to view the witnesses, observe their demeanor, and weigh the credibility of the proffered testimony. SeasonsCoal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
Sharon points out that the trial judge had only a transcript to review when he modified the magistrate's decision, and that he did not have the opportunity to observe the demeanor of the witnesses in their testimony. According to Sharon, we should reinstate the magistrate's decision finding that the entire equity in Pride Hill Road was marital property since the magistrate acted as the trier of fact at the evidentiary hearing.
We have previously noted that deference to credibility determinations made by a trial court "may have less application when the trial judge has committed those functions to a magistrate, but the presumption that the trial court was correct in its judgment exists, nonetheless." Cox v. Cox (Feb. 16, 1999), Fayette App. No. CA98-05-007, unreported, at 7-8, quoting Loges v.England, 1996 Ohio App. WL 631399, at *2 (Oct. 25, 1996), Montgomery App. No. 15606, unreported. Although the magistrate's decision carries a presumption of correctness, the trial court is not required to adopt it. See Civ.R. 53(E)(4)(a) and (b); Cox at 8. The trial court has plenary power over reviewing a magistrate's decision or any objections thereto. Id.
Specifically, Civ.R. 53(E)(4)(b) provides that after a magistrate has heard the evidence, "the [trial] court shall rule on any objections" by the parties and "may adopt, reject, or modify the magistrate's decision * * *." Civ.R. 53 places the "ultimate authority and responsibility" over the magistrate's decision with the trial court. Hartt v. Munobe (1993), 67 Ohio St.3d 3,5. As the ultimate fact finder, the trial court determines "whether the [magistrate] has properly determined the factual issues and appropriately applied the law, and where the [magistrate] has failed to do so, the trial court must substitute its judgment for that of the [magistrate]." Marley v. Marley (Oct. 13, 1997), Butler App. No. CA97-03-072, unreported, at 4-5, quoting Inman v. Inman (1996),101 Ohio App.3d 115, 118. Therefore, we find that the issue in this case is not whether deference should be given to the magistrate's decision or that the trial court erred in modifying the magistrate's decision, but whether the trial court's judgment is supported by the law and some competent, credible evidence.
In the instant case, there is no dispute that the $28,000 proceeds from the Apple Street home and $33,000 from the certificates of deposits came from Timothy's separate property. "Separate property" includes any real or personal property or interest therein that was acquired by one spouse prior to the date of the marriage, and any passive income and appreciation acquired from separate property during the marriage. R.C.3105.171(A)(6)(a)(ii) and (iii).[4] "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C.3105.171(A)(6)(b). The party seeking to classify a particular asset as separate property must prove its traceability by a preponderance of the evidence. Peck v. Peck (1994), 96 Ohio App.3d 731,734.
Timothy presented documentary evidence of his premarital ownership in the assets and a computer printout of the savings account showing the deposits and withdrawals from the account throughout the marriage. The trial court found that both parties agreed that $61,000 of Timothy's premarital assets were deposited into the joint savings account and then withdrawn to pay for the construction of the Pride Hill Road home. Of particular relevance is the following exchange which took place on direct examination between Sharon and her counsel:
What has this account been used for?
 For savings. I mean he cashed in the CD's and it was all put into a joint account and as we built the house we took the money out of the joint account and paid for the house.
* * *
How did you finance building this home?
How did you pay for it?
 With the money [that] we had from the house and the CD's and what was in the savings account and our pay.
 Okay. The money from the house, where did the money go? When he sold the house that he owned prior to the marriage that was used as your marital residence what happened to that money?
It went into a joint savings account.
And along with other money that had been saved?
Yes.
 What happened to the CD's when they came due or were cashed in?
They was [sic] put into the joint savings account.
 Now the house was paid for with money withdrawn from the joint savings account, correct?
A. Correct.
In addition, Timothy testified that he had no intent to make a gift of his $61,000 premarital funds to Sharon. The funds were placed temporarily in the joint savings account as a matter of convenience to pay for the construction costs of the Pride Hill Road home. Sharon testified that although Timothy did not give her the money, the funds became marital property when Timothy deposited them into the joint savings account because "it was a marriage."
Although money is fungible, the placing of funds in a joint savings account during the course of a marriage and the subsequent use of funds from that account to build a jointly owned home does not necessarily transmute the funds into marital property. It is important to note that the holding of title to property by one spouse individually, or by both spouses in a form of co-ownership, does not in and of itself determine whether the property is marital or separate. R.C. 3105.171(H).
Based upon the foregoing, we find that the trial court's judgment finding that $61,000 was Timothy's separate property is supported by the law and competent, credible evidence. When equity in the marital home is contributed by one spouse and that equity can be traced to his premarital funds, those funds remain the spouse's separate property. See Schneider v. Schneider (Mar. 29, 1999), Brown App. Nos. CA98-03-007 and CA98-03-009, unreported, at 3-4. We therefore conclude that the trial court did not abuse its discretion in awarding Timothy $61,000 as an offset against the equity in the Pride Hill Road home. Sharon's assignment of error is overruled.
In his cross-appeal, Timothy raises a single assignment of error:
 THE TRIAL COURT ERRED IN FINDING THE SAVINGS ACCOUNT FUNDS OF THE DEFENDANT/APPELLEE WERE MARITAL PROPERTY.
In his assignment of error, Timothy contends that his premarital savings account balance of $12,846.14 is his separate property and not marital property. Timothy argues that the $12,846.14 is traceable to the savings account because the balance was never depleted below that amount throughout the marriage, and, therefore, he is entitled to an offset in that amount against the $50,735.09 in the savings account.
The record reveals that Timothy is raising this argument for the first time on appeal. In the proceedings below, Timothy claimed that the $12,846.14 was his separate property because those funds were traceable to the construction costs of the marital home and sought an offset in that amount from the equity in the marital home. The trial court found that the $12,846.14 had become marital property because there was no evidence that traced these funds to the construction cost of the Pride Hill Road home, which was constructed four years after the parties married.
We find that Timothy has failed to preserve any alleged error concerning his premarital interest in the savings account. An appellate court will not consider as error an issue raised for the first time on appeal. Hodges v. Hodges (May 27, 1997), Butler App. No. CA97-10-207, unreported, at 4, citing Schade v. CarnegieBody Co. (1982), 70 Ohio St.2d 207, 210. A party waives his right to appeal an error when the issue could have been brought to the attention of the trial court at a time when such error could have been avoided or otherwise corrected. Id.
Further, under the doctrine of "invited error," it is well-settled that "a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." Czup v. Czup, 1999 Ohio App. WL 744034, at *5 (Sept. 17, 1999), Ashtabula App. No. 98-A-0046, unreported, quoting Lester v.Leuck (1943) 142 Ohio St. 91, paragraph one of the syllabus. See, also, In re Amanda Boylan (Jan. 26, 1998), Butler App. No. CA97-04-088, unreported at 7. A party "cannot be permitted, either intentionally or unintentionally, to induce or mislead a court into the commission of an error and then procure a reversal of the judgment for an error for which he was actively responsible." Lester at 93.
In the instant case, Timothy induced or invited any error the trial court may have made in finding that the $12,846.14 was marital property and not his separate property. Timothy consistently made representations to the trial court that the $12,846.14 was traceable to the construction cost of the Pride Hill Road home. The record reveals that in his August 3, 1998 trial memorandum, Timothy proposed that the $12,846.14 along with his two other premarital assets should be returned to him by way of offsets to him in the equity of the Pride Hill Road home, and that Sharon should receive one-half of the $50,735.09 in the savings account. Specifically, Timothy stated that "copies of the certificates of deposit and bank account are being provided to the Court and clearly their proceeds are also traceable into the Pride Hill Road house."
At the hearing, the following exchange took place between Timothy and his counsel:
 Okay. If I understand correctly you want the Court to find that you have $73,800 of premarital property and give you credit for that against the house, is that right?
A. Yes.
Further, in his objections to the magistrate's decision, Timothy stated that "all three of these assets were put into the present residence at 1250 Pride Hill Road, Hamersville, Ohio."
In light of the foregoing, we find that Timothy has waived his right to claim any error on appeal. See Hodges, Butler App. No. CA97-10-207, unreported, at 4; Czup, 1999 Ohio App. WL 744034, at *5. Timothy's assignment of error is not well-taken.
Judgment affirmed.
POWELL, P.J., and YOUNG, J., concur.
[1] The $73,000 offset requested by Timothy represented the value of his three premartial assets that included: (1) $28,000 proceeds from the sale of his Apple Street home; (2) $33,000 from certificates of deposit; and (3) $12,800 in a savings account (rather than the actual value of $12,846.14).
[2] In his decision, the magistrate stated that "[a]lthough the funds did derive from the premarital assets of the Defendant and although they may be traceable, the court finds them to be marital based upon the totality of several factors." The magistrate's decision does not reflect that he followed the mandates of R.C.3105.171, which requires that the court make a determination concerning marital and separate property and then use this information to decide the disposition of the parties' property. See R.C. 3105.171(B) and (D).
[3] The factors considered by the magistrate were: (1) the savings account was knowingly converted to a joint account; (2) the real estate was in the name of both parties with joint survivorship; (3) there was nothing in writing to indicate that there was an intention to keep his premarital assets separate; (4) although Sharon did not believe the monies were a gift, Sharon believed that they were going to pool their money and that the monies contributed to the savings account and into the marital home would be the property of the marriage; (5) Timothy's testimony that he did not intend his premarital assets to be a gift to Sharon, but he was aware that Sharon would have unlimited access to his funds in the joint savings account; and (6) conversion of the savings accounts occurred in the early nineties and the real estate purchase occurred in 1993.
[4] "Marital property" includes all personal property currently owned by either or both of the spouses that was acquired by either or both of the spouses during the marriage or any interest therein. See R.C. 3105.171(A)(3)(a).