DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Daniel Howard Freeman ("Husband") appeals the decision of the Wayne County Court of Common Pleas, Domestic Relations Division, in favor of Appellee, Gayle Gorman Freemen ("Wife"). We affirm in part and reverse in part.
 {¶ 2} This matter "stems from a divorce action initiated by Husband against Wife. The parties reached an agreement with regard to certain financial issues and entered a judgment entry regarding spousal support, allocation of debt and division of property on April 6, 2006. The parties were much more contentious with regard to the issues of allocating parental rights and *Page 2 
responsibilities and child support." Freeman v. Freeman, 9th Dist. No. 06CA0049, 2007-Ohio-1351, at ¶ 2 ("Freeman I "). The parties, married in 1984, had three children, CF., who is an emancipated college student; S.F., a 19 year old high school graduate; and E.F., born May 13, 1992, now 15 years old. Beginning on August 29, 2005, and for five non-consecutive days thereafter, the magistrate heard evidence on the child custody and support issues.
 {¶ 3} On April 25, 2006, the magistrate issued his decision ("Magistrate's Decision"), which the trial court adopted and incorporated into a judgment decree of divorce the same day. "Both parties filed objections to the magistrate's decision in accordance with Civ. R. 53(D)(3). Husband also filed supplemental objections to the magistrate's decision. On July 3, 2006, the trial court overruled both parties' objections to the magistrate's decision." Freeman I at ¶ 3. Husband timely appealed the trial court's judgment entry to this Court in Freeman I; however, we dismissed the appeal on March 26, 2007, because the trial court's July 3, 2006 judgment entry was not a final appealable order. On May 4, 2007, the trial court issued a nunc pro tunc judgment entry ("Judgment Entry"), from which Husband now appeals, raising seven assignments of error.
 Assignment of Error No. III
"The trial court erred and abused its discretion in determining the parties' gross annual incomes."
 {¶ 4} For ease of discussion, we begin with Husband's third assignment of error in which he argues, as related to his first, second and fourth assignments of *Page 3 
error, that his child support obligation is erroneous. In this assignment of error, Husband asserts that the trial court's determination of the respective incomes of the parties was erroneous. Specifically, Husband asserts that the trial court "failed to consider the numerous and substantial sources from which [Wife] receives income during a calendar year, or defers income which she receives in any given calendar year." Husband also asserts that the trial court "assigned a phantom income" to him of $173,000.00, when the evidence established that Husband earned $82,000.00 in 2004, and that his income for 2005 would be "not quite as good as 2004."
 {¶ 5} R.C. 3119.01(C)(5) defines income as either of the following:
 "(a) For a parent who is employed to full capacity, the gross income of the parent;
 "(b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent." Id.
 {¶ 6} Gross income is defined as:
 "the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in division (D) of section 3119.05 of the Revised Code; commissions; royalties; tips; rents; dividends; severance pay; pensions; interest; trust income; annuities; social security benefits, including retirement, disability, and survivor benefits that are not means-tested; workers' compensation benefits; unemployment insurance benefits; disability insurance benefits; benefits that are not means-tested and that are received by and in the possession of the veteran who is the beneficiary for any service-connected disability under a program or law administered by the United States department of veterans' affairs or veterans' administration; spousal *Page 4 
support actually received; and all other sources of income." R.C. 3119.01(B)(7).
A. Husband's Income
 {¶ 7} The trial court adopted the Magistrate's Decision, which found Husband's income for child support purposes to be equal to Husband's adjusted gross income as set forth on his 2004 federal income tax return, which amount was supported by child support worksheet filed by Husband. The Magistrate then adjusted the gross income figure from Husband's tax return upward to reflect a net operating loss that the Magistrate determined to be a loss on paper only. The Magistrate gave no weight to the Wife's testimony and opinion that the Husband's income was much higher, although Wife is a certified public accountant. The Magistrate's Decision states:
 "In reviewing [Husband's] most recent individual tax return, the Magistrate feels his minimum income is $94,417 per year. The loss carry-over is a paper figure. The Magistrate feels that figure should be added back to arrive at his income for purposes of child support calculation. Because both parties are able to make adjustments on their incomes in the way of write-offs and set-offs, the Magistrate feels that no one would be able to pinpoint what the parties' incomes truly are. The Court must give great weight to the tax returns.
 * * *
 "Both parties are coming away with substantial assets. Granted [Wife's] assets will be between fourteen and twenty-two million dollars, [Husband] will still receive at least 2.1 million based upon the property division. He also has his corporation and other assets. Both parties have significant investments and have the ability to earn more than what the tax returns would currently show.
 * * * *Page 5 
 "[Wife's] proposed worksheet shows [Husband's] income at a total of $463,722 a year.
 * * *
 "[Husband's] income for support purposes would be $173,000."
 {¶ 8} Thus, according to the Magistrate, the starting point for Husband's gross income for child support purposes is the amount set forth on his 2004 tax return of $94,417.00. To that figure, the Magistrate added a net operating loss of $78,592.00 that had been used to offset Husband's 2004 income for losses incurred in previous years, to arrive at a total gross income figure of $173,000.00.
 {¶ 9} The testimony and evidence at trial supports the Magistrate's findings and calculations. The child support worksheet submitted by Husband as an exhibit to his trial brief indicates that Husband's annual gross income for 2004 was $94,417.00. The worksheet does not adjust that income other than for local income taxes paid. At trial, the Husband testified that his income was earned as president of Freeman Building Systems, a small construction company. He testified that income fluctuated in the construction industry and that his 2002 and 2003 tax returns showed losses of $55,487.00 and $150,833.00, respectively. Husband indicated that he used those losses to offset his income in 2004 to arrive at the adjusted gross income shown on his 2004 tax return of $94,417.00.
 {¶ 10} In Poitinger v. Poitinger, 9th Dist. No. 22240, 2005-Ohio-2680, we acknowledged the propriety of including "phantom income" in a party's gross income for the purposes of calculating spousal support where the statute is silent *Page 6 
as to whether such income should be included. Id. at ¶ 18. The logic ofPoitinger applies here. R.C. 3119.01 is silent as to whether net operating losses may be used to offset income for the purposes of calculating child support. Without statutory authority for inclusion or exclusion, "claims such as [Husband's] require courts to make sure that the support obligor is not merely attempting to manipulate his income and wrongfully shelter a portion of it from his support obligations." Id. at ¶ 18. "The trial court was in a better position than this Court to make the credibility assessments essential to such a determination." Id.
 {¶ 11} Based on the foregoing, Husband has not persuaded this Court that the trial court abused its discretion in determining Husband's gross income for child support purposes to be $173,000.
B. Wife's Income
 {¶ 12} Just as with the Husband's income, in determining the Wife's income, the Magistrate noted that "[i]t would be extremely difficult for anyone to come up with the exact income of [Wife]" because "[Wife] also has the ability to manipulate her income for purposes of tax reporting." However, just as the Magistrate did in determining Husband's income, the Magistrate relied on the
 Wife's tax returns as being the best evidence of income. The Magistrate stated: "[Wife's] individual returns show in 2002[,] she had adjusted gross income of $201,433. In 2003[,] it was $374,640. In 2004[,] it was $444,000. The tax return for 2005 has not yet been prepared." *Page 7 
 {¶ 13} The Magistrate then noted that Wife received trust fund income that was not shown on the tax return. The Magistrate also acknowledged the evidence of Wife's expenses to maintain the household. The Magistrate finally noted that the Husband's initial child support worksheet listed Wife's income as $326,397.00 and his later worksheet shows Wife's "income at $444,000 for two calculations and $1,159,000 on two other calculations."
 {¶ 14} In conclusion and considering all of the evidence presented, the Magistrate made this determination as to Wife's income:
 "For purposes of a support calculation, the Magistrate will accept [Wife's] representation that 2005 would be consistent with 2004 and her income would be $444,000. However[,] added to that the Magistrate would recommend there be some trust fund income. There was no payment made for 2003 and a substantial payment for 2004. It would be unfair to hit defendant with the entire amount in 2004 for a support calculation. Based upon the evidence presented to the Magistrate and within the Court's discretion, the Magistrate would recommend defendant's income be calculated at $500,000 per year for child support purposes."
 {¶ 15} With regard to "other income" that Husband alleges should be considered as income to the Wife, the Magistrate made the following finding:
 "There is much disagreement with regard to the parties' incomes for purposes of a child support calculation. Both parties are in a position to somewhat control their income. Both parties receive additional benefits from their corporations in the form of paid expenses or tax privileges that allow for carry-over losses."
 {¶ 16} Based on the foregoing and our review of the record, it is clear that the Magistrate considered the sources from which Wife receives income as well as any income deferrals. Husband has not persuaded this Court that the trial court *Page 8 
abused its discretion in determining Wife's gross income for child support purposes to be $500,000.00.
 {¶ 17} Husband's third assignment of error is overruled.
 Assignment of Error No. I "The trial court erred and abused its discretion in its calculation and determination of [Husband's] child support obligation."
 Assignment of Error No. II "The trial court erred and abused its discretion by failing to enter any findings in support of its determination of [Husband's] child support obligation."
 Assignment of Error No. IV "The trial court erred and abused its discretion in determining [Husband's] child support obligation should be higher than the child support guideline amount."
 {¶ 18} Having determined that the trial court's income determination to be proper, we will now discuss Husband's first, second and fourth assignments of error. In these assignments of error, Husband asserts that the trial court erred in (1) determining and calculating Husband's child support obligation; (2) failing to enter findings of fact in support of its child support determination; and (3) deviating from the child support guidelines.
 {¶ 19} "We review matters involving child support under the abuse-of-discretion standard." DeJesus v. DeJesus, 170 Ohio App.3d 307,2007-Ohio-678, at ¶ 7, citing Booth v. Booth (1989), 44 Ohio St.3d 142,144. "An abuse of discretion is more than an error of judgment; it means that the trial court was *Page 9 
unreasonable, arbitrary, or unconscionable in its ruling."DeJesus at ¶ 7, citing Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. "When applying the abuse-of-discretion standard, this court may not substitute its judgment for that of the trial court." DeJesus at ¶ 17, citing Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621.
 {¶ 20} R.C. 3119.04(B) sets forth the procedure by which the trial court determines the amount of child support where the combined incomes of the parties exceed $150,000.00. It is undisputed that the parties' combined incomes are in excess of $150,000.00. R.C. 3119.04(B) states:
 "(B) If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court, * * * shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court or agency shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of one hundred fifty thousand dollars, unless the court or agency determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount. If the court or agency makes such a determination, it shall enter in the journal the figure, determination, and findings."
 {¶ 21} Husband's child support obligation, as set forth in the Judgment Entry ($995 per month/per child), is the same amount as recommended in the Magistrate's Decision, which states, with regard to the issue of deviation:
 "In considering a deviation, the Magistrate has looked at the payor in this instance who is the [Husband]. His income has been determined to be substantially less than the [Wife's]. The Magistrate has also *Page 10 
considered the additional expenses as proposed by [Wife]. The Magistrate feels both parties are in a position to adequately take care of these children until they are adults. There would be no need for a deviation from the guidelines."
(Emphasis added).
 {¶ 22} It is true that the combined child support ordered is higher than the minimum required by R.C. 3119.04(B). However, the higher-than-the-minimum child support ordered is not a deviation that requires any explanation. Guertin v. Guertin, 10th Dist. No. 06AP-1101,2007-Ohio-2008, at ¶ 6 (holding that "R.C. 3119.04(B) `does not require any explanation of [the trial court's] decision unless it awards less than the amount awarded for combined incomes of $150,000,'" quotingCyr v. Cyr, 8th Dist. No. 84255, 2005-Ohio-504, at ¶ 56). The statute expressly requires findings of fact only when the trial court orders child support less than the $150,000.00 amount. See R.C. 3119.04(B). The Magistrate's finding, as emphasized above, simply explains that the trial court found no reason to decrease the child support obligation from the amount required by parties whose combined incomes are in excess of $150,000.00, i.e., there is no need for a deviation downwards.
 {¶ 23} Ohio courts have interpreted R.C. 3119.04(B) as giving trial courts discretion in determining child support amounts on a case-by-case basis based on their assessment of the needs and standard of living of the children. Frazier v. Daniels (1997), 118 Ohio App.3d 425, 428-29;Siebert v. Tavarez, 8th Dist. No. 88310, 2007-Ohio-2643, a ¶ 45. "[W]hen the income of the parents is greater than $150,000, the appropriate standard for the amount of child support is `"that *Page 11 
amount necessary to maintain for the children the standard of living they would have enjoyed had the marriage continued."'" Maguire v.Maguire, 9th Dist. No. 23581, 2007-Ohio-4531, at ¶ 12, quotingBerthelot v. Berthelot, 154 Ohio App.3d 101, 2003-Ohio-4519, at ¶ 24, quoting Birath v. Birath (1988), 53 Ohio App.3d 31, 37.
 {¶ 24} It is clear from the Magistrate's 48-page decision, as adopted by the trial court, that the trial court assessed the needs and standard of living of the Freeman children before ordering a combined support obligation of $97,371.06. Husband has failed to demonstrate that the trial court abused its discretion in so ordering. It should also be noted that, although the trial court was not required to follow any particular formula when it ordered child support in excess of the minimum amount, the statutory child support obligation for parties with combined incomes of $150,000.00 and two children is $21,971.00. This figure represents 14.6% of $150,000.00 The combined child support obligation ordered here of $93,371.06 is 14.6% of the parties' actual combined income of $664,770.00.
 {¶ 25} Based on the foregoing, Husband's first, second and fourth assignments of error are overruled.
 Assignment of Error No. V "The trial court erred and abused its discretion by awarding the [Wife] both tax dependency exemptions as the [Wife], given her gross annual income, is precluded from claiming the dependency exemptions pursuant to the Internal Revenue Code." *Page 12 
 {¶ 26} In his fifth assignment of error, Husband asserts that the trial court improperly awarded the tax dependency exemptions to the Wife because she was not able to utilize them pursuant to the Internal Revenue Code. Wife asserts that since neither party presented any evidence related to the tax dependency exemption, Husband cannot raise the issue for the first time on appeal. We agree.
 {¶ 27} "The allocation of tax exemptions between parents will not be disturbed absent an abuse of discretion." Ankney v. Bonos, 9th Dist. No. 23178, 2006-Ohio-6009, at ¶ 38, citing Starr v. Starr (June 7, 1995), 9th Dist. No. 16817, at *7. "Federal law entitles the custodial parent to the dependency tax exemption." Ankney at ¶ 38, citing Esber v.Esber (1989), 63 Ohio App.3d 394, 399. The Supreme Court of Ohio, however, allows "the dependency exemption to be awarded to the non-custodial parent if it were to serve the best interest of the child." Ankney at ¶ 38, citing Bobo v. Jewell (1988), 38 Ohio St.3d 330,332.
 {¶ 28} It is true that "[i]n determining the best interests of the child with regards to the dependency tax exemption, the court must decide which parent will benefit the most by examining which parent would receive a net tax savings as result of the dependency exemption."Ankney at ¶ 39, citing Esber, 63 Ohio App.3d at 399 and Singer v.Dickinson (1992), 63 Ohio St.3d 408, 415. "The allocation of the dependency exemption creates a net tax savings to the parent whose taxable income falls in the higher tax bracket." Ankney at ¶ 39, citingSinger, 63 Ohio St.3d at 415. *Page 13 
 {¶ 29} Here, however, there was no evidence presented on the tax dependency issue. The Magistrate's Decision states:
 "There was absolutely no testimony or evidence presented with regard to the tax dependency issue. Therefore the residential parent would be able to claim the children."
 {¶ 30} The Judgment Entry states:
 "Pending further Order of this Court, [Wife] shall be entitled to claim the minor children as dependants for income tax purposes."
 {¶ 31} Our review of the record supports the Magistrate's Decision as adopted by the Judgment Entry. We addressed a similar situation inWhite v. White (Feb. 18, 1998), 9th Dist. No. 18275. In White, one party to a divorce challenged a property division asserting that the trial court failed to consider the tax consequences of its allocation as required by R.C. 3105.171(F). We held that the trial court did not abuse its discretion in allocating the assets to the tax detriment of one party, holding:
 "[T[his issue is raised for the first time on appeal. * * * [N]o evidence was presented on the issue of the tax consequences involved in the parties' assets; any attempt by the trial court to consider the tax consequences would be speculative and without evidentiary support. `[A] court need not consider tax consequences that are speculative.'" White at *3, quoting James v. James (1995), 101 Ohio App.3d 668, 688.
 {¶ 32} Moreover, it is well-established that "[w]hile the trial court does not need to state a basis for allocating the exemption, the record does need to include financial data in relation to the above factors to support the trial court's decision." *Page 14 Ankney at ¶ 40, citing Streza v. Streza, 9th Dist. No. 05CA008644,2006-Ohio-1315, at ¶ 12-13.
 {¶ 33} Based on the foregoing, and despite the fact that Husband filed a written objection to the Magistrate's Decision vis-à-vis the tax dependency exemption award, we hold that the trial court had no alternative but to adopt the Magistrate's Decision related thereto. Any attempt by the trial court to consider the tax consequences of the dependency exemptions being awarded to the Wife and to modify or overrule the Magistrate's Decision, which referenced the general rule set forth in Ankney, would be speculative and without evidentiary support. White at *3.
 {¶ 34} Husband's fifth assignment of error is overruled.
 Assignment of Error No. VI "The trial court erred and abused its discretion by issuing sanctions against counsel for both parties in the amount of two thousand dollars; by overruling the [Husband's] objections thereto; and ordering the two thousand dollars ($2,000.00) in sanctions currently on deposit with the Clerk of Courts to be given to charity."
 {¶ 35} In his sixth assignment of error, Husband asserts that the trial court abused its discretion by: (1) assessing sanctions of $1,000.00 against each of Husband's and Wife's lead attorneys in its March 15, 2006 order for their failure to file stipulations by a court-imposed deadline; (2) denying Husband's objections to the March 15, 2006 order; and (3) ordering the sanctions to be disbursed $1,000.00 each to the YMCA of Wooster Strong Kids Fund ("YMCA") and the *Page 15 
Wayne County Children's Services special fund used for foster children ("Children's Services").
 {¶ 36} We initially note that the Husband is without standing to appeal sanctions imposed upon Wife's counsel and the Wife has not filed a cross-appeal related to the sanction imposed against her attorney. Thus, the only sanction at issue in this appeal is the $1,000.00 sanction imposed upon Husband's lead trial attorney.
 {¶ 37} We also note that although Husband's assignment of error appears to challenge the trial court's overruling of Husband'sobjections to the Magistrate's March 15, 2006 order, the substance of his brief and the remainder of this assignment of error relates to the imposition of sanctions, which, as will be discussed below, is a magistrate's order to be challenged by a motion to set aside, rather than objections. Husband's motion filed in response to the Magistrate's March 15, 2006 decision was titled as a motion to set aside and objections. Thus, we will construe Husband's assignment of error as being a challenge to the trial court's denial of Husband's motion to set aside instead of a challenge to the trial court's overruling Husband's objections. It should be noted that the trial court did not "overrule" the Husband's objections as it was not required to do so. Because the entirety of the Magistrate's March 15, 2006 decision would fall under the Magistrate's general powers to issue orders without trial court approval as set forth in then-existing Civ.R. 53(C)(3), the trial court was not required to adopt, modify, *Page 16 
or reject the Magistrate's March 15, 2006 order. Thus, the only trial court order related to the March 15, 2006 decision is the order denying the Husband's motion to set aside and we will deem this Assignment of Error as being a challenge to that order.
 {¶ 38} The Magistrate imposed the sanction in his March 15, 2006 order[1], stating:
 "The Magistrate would recommend both lead counsel be sanctioned $1,000 each for failure to comply with directives made by this Magistrate. The monies would be held in escrow by the Clerk's office pending further order of this Court.
 * * *
 "7. Within five days of the journalization date of this Magistrate's Order, Attorney Joseph Stafford and Attorney Thomas Cole shall each pay $1,000 in sanctions to the Clerk's office. The money shall be held by the Clerk's Office pending further order of this Court. The Court reserves the discretion to issue sanctions until these matters are concluded."
 {¶ 39} The Husband filed a motion to set aside the Magistrate's March 15, 2006 order imposing sanctions, which was overruled/denied by the trial court on May 12, 2006. The Husband challenges the trial court's May 12, 2006 entry.
 {¶ 40} Pursuant to the version of the Ohio Civil Rules of Procedure in place at the time the Magistrate's March 15, 2006 decision was issued, the Magistrate was procedurally permitted to impose sanctions and enter a pretrial order without *Page 17 
trial court approval. Civ.R. 53(C)(2)(e) and Civ.R. 53(C)(3)(a). Husband could move to set aside the Magistrate's order pursuant to then-existing Civ.R. 53(C)(3)(b), which stated:
 "(b) Appeal of pretrial orders. Any person may appeal to the court from any order of a magistrate entered under division (C)(3)(a) of this rule by filing a motion to set the order aside, stating the party's objections with particularity."
 {¶ 41} Husband's March 24, 2006 motion to set aside gave a recitation of the facts explaining the parties' failure to file stipulations as requested by the Magistrate and the Magistrate's failure to enter an order so requiring and then asserted that:
 "The Magistrate's recommendation that lead counsel each should be sanctioned a Thousand Dollars ($1,000.00) is an abuse of discretion. The Magistrate's recommendation is arbitrary, unreasonable, and is unconscionable."
 {¶ 42} Although the Husband's motion to set aside does not clearly set forth with particularity the legal basis for his motion, it implies that the Magistrate was without authority to impose sanctions where the parties did not violate an order of the Court. We hold this to be sufficient to preserve this issue on appeal.
 {¶ 43} We review a trial court's decision to deny a motion to set aside a magistrate's order for abuse of discretion. Baire v. Baire
(1995), 102 Ohio App.3d 50, 53. Perkins v. Perkins (June 6, 1997), 6th Dist. No. L-96-345, at *2.
 {¶ 44} A magistrate could impose sanctions where it found a party to be in contempt. Then-existing Civ.R. 53(C)(3)(c) stated: *Page 18 
 "(c) Contempt in the magistrate's presence. In cases of contempt in the presence of the magistrate, the magistrate may impose an appropriate civil or criminal contempt sanction. Contempt sanctions under division (C)(3)(c) of this rule may be imposed only by a written order that recites the facts and certifies that the magistrate saw or heard the conduct constituting contempt. The contempt order shall be filed and a copy provided by the clerk to the appropriate judge of the court forthwith. The contemnor may by motion obtain immediate review of the magistrate's contempt order by a judge, or the judge or magistrate may set bail pending judicial review."
 {¶ 45} "Contempt of court may be defined as disobedience of a court order or conduct that brings the administration of justice into disrespect or impedes a court's ability to perform its functions."Willis Linnen Co., L.P.A. v. Linnen, 163 Ohio App.3d 400,2005-Ohio-4934, at ¶ 17, citing Windham Bank v. Tomaszczyk (1971), 27 Ohio St.2d 55, paragraph one of the syllabus. "[Indirect contempt of court is defined as an act `committed outside the presence of the court but which also tends to obstruct the due and orderly administration of justice.'" Willis Linnen Co. at ¶ 17, quoting In re Lands (1946), 146 Ohio St. 589, 595.
 {¶ 46} It is undisputed that the Magistrate did not enter an Order requiring the parties to file stipulations by a date certain. The Magistrate did, however, give the parties a directive by letter dated January 10, 2006, to have a meeting to discuss stipulations "and expected written stipulations of substantial nature to be submitted prior to the final hearing." The Magistrate's office also called the parties to inform them that the stipulations were to be filed by January 30, 2006, and denied the parties' request to have until February 2, 2006, to file stipulations because the Magistrate wanted to have time to review the stipulations prior to the *Page 19 
commencement of the hearing. Without addressing whether the conduct in response to the Magistrate's directives could properly be deemed an act of contempt, the Magistrate had the authority to find that the parties' failure to comply with these directives was an act of contempt because it impeded the court's ability to perform its functions pursuant toWillis. However, the Magistrate did not do so. The Magistrate did not even discuss the issue of contempt and did not find the parties to be in contempt and/or issue a contempt order as required by then-existing Civ.R. 53(C)(3)(c). Without a finding and order of contempt, the Magistrate was without authority to impose sanctions.
 {¶ 47} Given our holding that the Magistrate was without authority to impose sanctions, the remaining issue addressed by this assignment of error, i.e., the trial court's decision to disburse the sanction funds to the YMCA and Children's Services is rendered moot and we will not address it.
 {¶ 48} Husband's sixth assignment of error is sustained.
 Assignment of Error No. VII "The trial court erred by adopting the Magistrate's decision without entering its own judgment on the issues."
 {¶ 49} Finally, Husband asserts that the trial court erred in not independently reviewing and analyzing the Magistrate's Decision in contravention of Inman v. Inman (1995), 101 Ohio App.3d 115. Husband further notes that the Judgment Entry does not comply with the trial court's obligations pursuant to Civ.R. 53, which also requires an independent review. Husband specifically *Page 20 
objects to the portions of the Judgment Entry relating to child support, the award of tax dependency exemptions to Wife and the payment of sanctions. Husband argues that because the evidence in the record could not have led the trial court to adopt the Magistrate's Decision, that the trial court must not have undertaken an independent review of the Magistrate's Decision. We disagree.
 {¶ 50} "[T]his Court has consistently held that, even in the face of objections, a trial court is not required to conduct an independent review of the facts and make its own factual determination when adopting a magistrate's decision. Accordingly, there exists no requirement that the trial court conduct a de novo review of the magistrate's decision. `Such a requirement would abrogate the role of a magistrate in a majority of cases.'" Berry v. Firis, 9th Dist. No. 05CA0109-M,2006-Ohio-4924, at ¶ 9, quoting Dunfee v. Dunfee, 9th Dist. No. 05CA008801, 2006-Ohio-2971, at ¶ 6.
 {¶ 51} When adopting a recommendation of a magistrate, the trial court is only required to "separately enter his or her own judgment setting forth the outcome of the dispute[.]" Fields v. Fields, 9th Dist. No. 04CA0018-M, 2005-Ohio-471, at ¶ 28, quoting Harkai v. ScherbaIndustries, Inc. (2000), 136 Ohio App.3d 211, 218. The judgment entry need only be all inclusive so as to allow the parties to look at the document "in order to determine their rights and obligations relating to the underlying action." Fields at ¶ 28, citing Conrad v. Conrad, 9th Dist. No. 21394, 2003-Ohio-2712, at ¶ 4. *Page 21 
 {¶ 52} The Judgment Entry satisfies these requirements. It sets forth Husband's child support obligation and allocates the tax dependency exemption to Wife. The propriety of the Judgment Entry related to the sanctions was addressed in our discussion of Husband's sixth assignment of error. The propriety of the Magistrate's Decision vis-à-vis child support and the tax dependency exemption was also discussed above and there is nothing in the record or the Judgment Entry to evidence a less than independent review of the Magistrate's Decision.
 {¶ 53} "An appellate court reviewing a lower court's judgment indulges in a presumption of regularity of the proceedings below." Hartt v.Munobe (1993), 67 Ohio St.3d 3, 7. Accordingly, a party asserting error bears the burden of affirmatively demonstrating the trial court's failure to perform its Civ.R. 53(E) duty of independent analysis. SeeHartt, 67 Ohio St.3d at 7. Husband has not met his burden.
 {¶ 54} Husband's citation to Inman v. Inman (1995),101 Ohio App.3d 115 in support of his proposition that the trial court did not conduct a proper review the Magistrate's Decision does not change this result. Besides being a case from the Second District Court of Appeals and thereby not binding upon this Court, Inman is distinguishable. InInman, the trial court found there to be evidence that the trial court had not conducted an independent review in that it was all but impossible for the trial court to properly adopt the magistrate's 20 page report, review the 180 page transcript, the party's 28 pages of objections, and the opposing party's 16 *Page 22 
page response to objections when it filed its entry adopting the magistrate's decision within 25 hours of the last filing.Inman, 101 Ohio App.3d at 119. Here, there is no evidence that the trial court did not conduct an independent review. The trial court did not issue the Judgment Entry until two and one-half months after the Magistrate's Decision was issued and one and one-half months after the Wife filed her response to the Husband's objections.
 {¶ 55} Husband's seventh assignment of error is overruled.
 {¶ 56} Husband's first, second, third, fourth, fifth and seventh assignments of error are overruled. Husband's sixth assignment of error is sustained and the judgment of the trial court is reversed only to the extent that the magistrate's March 15, 2006 order assessed a sanction against counsel for Husband.
Affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27. *Page 23 
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to both parties equally.
CARR, J. DICKINSON, J. CONCUR
[1] We note that the trial court was not required to adopt the Magistrate's imposition of sanctions pursuant to Civ.R. 53(C)(2)(e) and (C)(3)(a). *Page 1