[Cite as *Edminister v. Edminister*, 2011-Ohio-1899.]

**IN THE COURT OF APPEALS**

**NINTH APPELLATE DISTRICT**

**SUMMIT COUNTY, OHIO**

| | | |
|---|---|---|
| MARY E. EDMINISTER, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 25428** |
| MICHAEL E. EDMINISTER, | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Court of Common Pleas, Domestic Relations Division, Case No. DR 2006 07 2257.

Judgment: Modified and affirmed as modified.

*David H. Ferguson*, 57 South Broadway Street, 3rd Floor, Akron, OH 44308 (For Plaintiff-Appellee).

*Terence E. Scanlon*, 101 Clemson Court, Elyria, OH 44035 (For Defendant-Appellant).


CYNTHIA WESTCOTT RICE, J., Eleventh Appellate District, sitting by assignment.

{¶1} Appellant, Michael E. Edminister, appeals from the judgment of the Summit County Court of Common Pleas, Domestic Relations Division, holding him in indirect civil contempt for failing to comply with various orders set forth in the parties' divorce judgment; he also appeals the trial court's order requiring him to pay attorney fees accrued by appellee, Mary E. Edminister, in the course of prosecuting the underlying contempt action. For the reasons discussed in this opinion, we modify the trial court's judgment and affirm the judgment as modified.

{¶2} On November 17, 2006, the parties were divorced by final decree of the Summit County Court of Common Pleas, Domestic Relations Division. On April 18, 2008, appellee filed a post-decree motion seeking an order finding appellant in contempt for failing to meet various obligations under the final decree; in particular, appellee alleged since the order was journalized, appellant had failed to timely pay spousal support; failed to pay debts; failed to pay tax obligations; and failed to provide proof of life insurance. Appellee also requested appellant be required to pay all future spousal support through the Child Support Enforcement Agency. Appellee further sought an order compelling appellant to remove all tax liens against her residence. And, finally, appellee sought an order requiring appellant to pay all attorney fees and costs related to the litigation.

{¶3} Several hearings were held between April 2008 and early 2010, but the motion remained pending. On March 3, 2010, the trial court set a final hearing date of April 22, 2010, to resolve the matter. Six days before the hearing, appellant moved the trial court for a continuance. Appellant failed to appear at the hearing and, based upon the length of time the matter had remained pending, the trial court overruled appellant's motion for continuance from the bench.

{¶4} On April 29, 2010, based upon the testimony and evidence introduced at the hearing, the trial court found appellant in "willful contempt of the Judgment Entry filed *** on November 17, 2006." The court accordingly ordered appellant to serve 10 days in the Summit County Jail unless he "purge[d] himself of said contempt by removing the tax liens from [appellee's] residence, providing proof of the required life insurance policy, reimbursing [appellee] for the portion of the $12,176 she already paid

2

and then assuming the payment plan with IRS, paying legal fees in sum of $4,070 to Attorney David H. Ferguson and making arrangements for payment of the legal fees owed to Buckingham Doolittle and Burroughs. [Appellant] shall have 90 days from the date of filing this Judgment to complete the purge requirements."

{¶5} Appellant appeals the above judgment and assigns three errors for our review.[1]

{¶6} Appellant's first assignment of error reads:

{¶7} "The trial court's finding of indirect contempt violates due process under the Ohio and U.S. Constitutions because appellant's counsel never appeared on the record to explain his absence and never had access to the disputed attorney fee bills prior to the hearing."

{¶8} Contempt is generally understood as a disregard for judicial authority. See, e.g., *Lough v. Lough* (Nov. 5, 1999), 5th Dist. No. 98CA00120, 1999 Ohio App. LEXIS 5272, *26. "Contempt is either direct or indirect, depending on where it happens." *Forrer v. Buckeye Speedway Inc.*, 9th Dist. No. 07C0027, 2008-Ohio-4770, at ¶14. Direct contempt involves disruptive or defiant conduct that is committed in the presence of the court, or sufficiently near, such that the administration of justice is disrupted. *Harvey v. Harvey*, 9th Dist. Nos. 09CA0052 & 09CA0054, 2010-Ohio-4170, at ¶4. Indirect contempt, alternatively, occurs outside the court's presence. See *Cincinnati v. Cincinnati Dist. Council 51* (1973), 35 Ohio St.2d 197, 202.

---

1. As a peremptory note, this court has held a contempt order is final and appealable where the trial court makes both a finding of contempt and contemporaneously imposes an express penalty or sanction. See, e.g., *Noll v. Noll*, 9th Dist. Nos. 01CA007932 and 01CA007976, 2002-Ohio-4154, at ¶13. In this case the trial court found appellant in contempt and ordered him to serve 10 days in jail if he failed to purge within 90 days. As the order found appellant in contempt and imposed a specific, self-executing sanction, each requirement has been met. Id.; see, also, *Garrison v. Garrison* (June 27, 1994), 9th Dist. No. 16242, 1994 Ohio App. LEXIS 2917, *5-*6. The matter is therefore properly before us for consideration.

{¶9} Moreover, contempt proceedings may be either criminal or civil in nature. Criminal and civil contempt serve different purposes in the judicial system and are governed by different rules. *Lough*, supra, at *27. Civil contempt is pursued for the benefit of a complainant and is therefore remedial in nature. *In re Purola* (1991), 73 Ohio App.3d 306, 311. Alternatively, criminal contempt is usually characterized by unconditional fines or prison sentences. Id. One charged and found guilty of civil contempt must be allowed to purge him/herself of the contempt by showing compliance with the court's order he/she is charged with violating. Id. at 312. In the case of criminal contempt, however, there is no requirement that the individual charged be given the opportunity to purge the contempt.

{¶10} It is well-established that an alleged contemnor must be afforded due process. See, e.g., *Courtney v. Courtney* (1984), 16 Ohio App.3d 329, 332. "The essence of due process is the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.'" *Mathews v. Eldridge* (1976), 424 U.S. 319, 348, quoting *Joint Anti-Fascist Refugee Commt. v. McGrath* (1951), 341 U.S. 123, 171-172 (Frankfurter, J., concurring). Put differently, "*** due process requires that the alleged contemnor have the right to notice of the charges against him or her, a reasonable opportunity to defend against or explain such charges, representation by counsel, and the opportunity to testify and to call other witnesses, either by way of defense or explanation." *State ex rel. Miller v. Waller*, 10th Dist. No. 04AP574, 2004-Ohio-6612, at ¶7. It is axiomatic, however, that due process is not violated "*** if notice and an opportunity to be heard are given." *Thrower v. Akron*, 9th Dist. No. 21153, 2003-Ohio-1307, at ¶26.

{¶11} Before addressing the specific merits of appellant's argument, it is necessary to point out that the case was heard over the course of three separate days. Although a transcript of the third and final day of hearings appears in the record, appellant failed to have the first two days of hearings transcribed. As the court stated in *Knapp v. Laboratories* (1980), 61 Ohio St.2d 197, 199:

{¶12} "The duty to provide a transcript for appellate review falls upon the appellant. This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record. *** When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm."

{¶13} Because we have no ability to review the substance of the testimony or issues addressed during the first two days of hearings, any argument challenging the actual merits of the trial court's contempt ruling is waived.

{¶14} With this in mind, we turn to appellant's initial argument under his first assignment of error. Appellant claims he was denied due process because he was denied his right to counsel. Appellant is wrong.

{¶15} Appellant, an attorney by trade, was proceeding pro se and there is no indication he wished to enlist the services of independent counsel. Although appellant ostensibly sent Attorney Brown to meet with the trial judge before the hearing, nothing indicates Attorney Brown intended to appear on appellant's behalf, and, even if he had such intention, there is nothing in the record indicating the court prevented Attorney Brown from testifying or making a formal appearance.

5

**{¶16}** We recognize that there is authority to support the proposition that an indigent defendant is entitled to court-appointed counsel in contempt proceedings. See, e.g., *Burton v. Hootman*, 5th Dist. No. 06-COA-016, 2007-Ohio-521, at ¶32. In this case, however, there is nothing in the record indicating appellant was either indigent or, more importantly, prevented from obtaining counsel. The record is clear that appellant, as a pro se litigant, had notice of the proceedings, but simply failed to appear without explanation.

**{¶17}** Appellant next contends he was denied due process because the trial court failed to make a record of its conversation with Attorney Brown. Contrary to appellant's suggestion, the fact that the court did not engage its court reporter to make a record of the discussion it had with Attorney Brown in its chambers does not imply appellant was deprived of his rights. There is no indication Attorney Brown desired to be placed on record in appellant's stead. Thus, there is nothing in the record to suggest the court prevented appellant from attending the hearing or precluded him from being represented at the proceedings. Appellant's argument lacks merit.

**{¶18}** Next, appellant cites *Faulkner v. Pegram*, 5th Dist. No. 2010CA00022, 2010-Ohio-6614 for the proposition that due process is violated when a contemnor fails to appear at a contempt hearing and a court issues an order imposing a term of incarceration. *Faulkner*, however, is distinguishable.

**{¶19}** In *Faulkner*, the defendant was charged with criminal contempt. The court observed that many of the constitutional safeguards required in criminal trials are also present in criminal contempt proceedings. Id. at ¶15. Such safeguards include "*** the right of the accused to be advised of the charges against him, to have a reasonable

6

opportunity to meet the charges by way of explanation or defense, and the opportunity to call other witnesses on his behalf." Id. Despite the defendant's absence, the court found him in criminal contempt and sentenced him to 30 days in jail "without further hearing." Id. at ¶16. The Fifth Appellate District determined the imposition of the criminal sentence in the defendant's absence violated due process and therefore required a reversal of the court's judgment. Id.

{¶20} Here, appellant was found to be in indirect *civil* contempt and given an opportunity to purge the order within 90 days. Because the order was civil in nature and the jail time was conditional, the analysis in *Faulkner* does not apply to this case.

{¶21} Finally, appellant contends, by proceeding with the hearing in his absence, the trial court violated Summit County Domestic Relations Loc.R. 13.04(A). That rule states, in pertinent part: "The alleged contemnor must be present at the hearing in order to proceed with contempt charges." Because the court proceeded with the hearing in his absence, appellant contends his due process rights were violated. We again disagree.

{¶22} The record demonstrates that hearings on appellee's show cause motion were held over the course of three days. Appellant was present for the first two days. Although he was absent on the third day of hearings, he had notice and an opportunity to be heard. Appellant was present when the proceedings were initiated and was able to defend himself accordingly. We therefore hold Loc.R. 13.04(A) to be inapplicable to the instant case.

{¶23} The trial court did not deny appellant due process and therefore his first assignment of error is overruled.

**{¶24}** Appellant's second assignment of error provides:

**{¶25}** "The trial court abused its discretion when it denied the motion for continuance."

**{¶26}** The decision to grant or deny a continuance is within a trial court's discretion. *Carrico v. Carrico*, 9th Dist. No. 08CA009394, 2009-Ohio-668, at ¶3. An abuse of discretion connotes an attitude by the trial court that is arbitrary, capricious, or unconscionable. *In re N.P.*, 9th Dist. No. 23836, 2007-Ohio-5933, at ¶9. This court must weigh the potential prejudice to a defendant against the trial court's "'right to control its own docket and the public's interest in the prompt and efficient dispatch of justice.'" Id. *State v. Unger* (1981), 67 Ohio St.2d 65, 67. The *Unger* court further explained:

**{¶27}** "In evaluating a motion for a continuance a court should note inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstances which give rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." Id. at 67-68.

**{¶28}** As indicated above, appellant had notice of the hearing and an opportunity to be heard. On April 16, 2010, however, appellant moved the court for a continuance of the April 22, 2010 hearing to obtain further discovery relating to the attorney fees appellee was seeking and/or had accrued. The motion had not been ruled upon prior to April 22, 2010. Instead of hedging his bets and appearing at the previously scheduled

8

hearing, appellant sent Attorney Brown to speak with the court. As the discussion occurred off the record, we cannot speculate as to its substance. After the conversation, Attorney Brown evidently left the court and the hearing commenced in appellant's absence. Prior to taking testimony, the trial court overruled appellant's motion to continue from the bench, reasoning:

{¶29} "This matter has been pending for over two years and it's time to get it concluded which is why the Court was of the opinion that if all we needed was some information about attorney fees we could have gotten that at this hearing today and the matter would be resolved and done."

{¶30} This matter had been pending since 2008. On March 3, 2010, the parties received notice that the final hearing would be conducted on April 22, 2010. Six days before the hearing, appellant filed his motion to continue, alleging appellee had failed to provide certain documentation relating to the issue of attorney fees. Appellant claimed he had attempted to obtain the evidence "throughout the past week," but had received no return calls from appellee's counsel. Notwithstanding appellant's representation that appellee's counsel failed to return his calls, the record indicates appellant filed his "first set of interrogatories and request for production of documents" on the same date he filed the motion for continuance. The matter had been pending for two years at the time appellant filed his motion for discovery. Furthermore, appellant waited six weeks from the hearing notice (March 3, 2010) to file his motion for production (April 16, 2010). Finally, as indicated by the court, appellant's concerns regarding appellee's attorney fees could have been addressed at the hearing on April 22, 2010. Appellant, however,

failed to attend the hearing. Given the circumstances of this case, we therefore hold the trial court did not act unreasonably or arbitrarily in denying the continuance.

{¶31} Appellant's second assignment of error is overruled.

{¶32} Appellant's third assignment of error provides:

{¶33} "The trial court erred in ordering appellant to pay $27,775.00 in attorney fees to Buckingham, Doolittle and Burroughs because the bills lack an hourly rate, lack a total of hours worked, and [were] not supported by affidavit or witness testimony with actual knowledge."

{¶34} Preliminarily, we note an appellate court reviews a trial court's award of attorney fees for an abuse of discretion. *Rand v. Rand* (1985), 18 Ohio St.3d 356, 359. Unless the court's order is arbitrary or unreasonable, we shall leave it undisturbed. See, e.g., *In re N.P.*, supra.

{¶35} Here, appellant does not appear to dispute appellee's entitlement to fees and costs; rather, he complains that the summary bill of $27,755 for attorney fees to Buckingham, Doolittle and Burroughs is insufficient to meet minimal requirements of reasonableness. We disagree.

{¶36} Summit County Domestic Relations Court Local Rule 25.04(B) provides:

{¶37} "(1) Expert testimony is not required to prove the reasonableness of attorney's fees.

{¶38} "(2) In determining the reasonableness of attorney's fees requested, the court shall consider the affidavit of the attorney concerning fees and expenses, and Rule 1.5(a) of the Rules of Professional Conduct."

10

**{¶39}** Plaintiff's Exhibit 4, admitted at the hearing, is captioned: "Summary of Attorney Fees Paid Buckingham Doolittle & Burroughs regarding innocent spouse." The document contains voluminous records, which purport to detail-specific services rendered in the course of obtaining appellee's status as an "innocent spouse." The exhibit, however, fails to indicate the specific amount of time attorneys for the firm spent managing appellee's representation on any of the listed dates. Similarly, none of the documents indicate the hourly rates billed by attorneys representing appellee to achieve innocent spouse status. Finally, while it appears at least seven separate individuals (presumably attorneys) from the firm assisted appellee in achieving innocent spouse status, there was no affidavit attached to Exhibit 4.

**{¶40}** We acknowledge Exhibit 4 is general and ambiguous regarding how the firm arrived at the ultimate fee total; we also acknowledge it lacks an affidavit from an attorney attesting to the reasonableness of the fees themselves. Under the circumstances of this case, however, we find these deficiencies irrelevant.

**{¶41}** The record indicates the fees at issue were not outstanding at the time of the hearing. Rather, the record reflects appellee had previously paid these fees in the course of obtaining "innocent spouse status" to avoid future (and perhaps nullify past) penalties assessed by the IRS resulting from appellant's failure to pay outstanding taxes to which he was obligated under the separation agreement. Appellee, therefore, is not asking appellant to cover unpaid attorney fees that were accumulated during the pendency of the show cause motion; rather, she is seeking reimbursement for fees paid in the course of separate proceedings to which she was a party as a result of appellant's apparent willful neglect of his obligations under the divorce decree.

11

**{¶42}** The record demonstrates the trial court incorporated the parties' separation agreement into the final divorce decree. Of relevance to the issue of attorney fees is Section 12.3 of the separation agreement, which provides:

**{¶43}** "It is expressly stipulated that if either party fails in the due performance of any of his or her material obligations under this Agreement, the other party shall have the right, at his or her election, to sue for damages for breach thereof, to sue for specific performance, to rescind this Agreement, or to seek any other legal remedies as may be available, and *the defaulting party shall reimburse the nondefaulting party of any legal fees and expenses for any services incurred in any action or proceeding to compel performance hereunder. ***"* (Emphasis added.)

**{¶44}** Here, appellee was required to attain innocent spouse status to avoid tax penalties for which she was not responsible. Although the fees were not incurred in a proceeding to directly compel compliance with the separation agreement or divorce decree, they were necessarily connected to and, perhaps, the first step in enforcing compliance with the agreement and decree. Once appellee was declared an innocent spouse, the tax liability became appellant's sole legal obligation in the eyes of the IRS. Although the proceedings leading to appellee being declared an innocent spouse were not initiated to directly force appellant's compliance with the divorce decree, the IRS will assuredly use means that will compel appellant to lift the tax liens required by the underlying decree which he has heretofore ignored. Given this construction, the fees appellee incurred in the course of obtaining innocent spouse status could reasonably fall within the gamut of reimbursable expenses contemplated by the parties' agreement.

**{¶45}** Justice and equity also support the trial court's decision requiring appellant to reimburse appellee. Appellant failed to pay taxes that were his obligation under the final decree which led to penalties for which appellee became partially, yet unfairly, responsible. Appellee would not have incurred the litigation expenses of being declared an innocent spouse had appellant met his obligations under the decree in a timely manner. Appellant did not do so and, as a result, a persuasive case could be made that he invited the expenses, regardless of their amount, in connection with the ancillary tax litigation to which appellee became a reluctant party.

**{¶46}** Exhibit 4 indicates the $27,775.26 fee bill had been paid and, at the hearing, appellee testified she, in fact, paid this amount. Because the amount was incurred due to appellant's failure to comply with the divorce decree, we hold the trial court did not abuse its discretion in requiring appellant to reimburse appellee for the legal fees she expended to duly protect herself from the consequences of appellant's default.

**{¶47}** One final point on this issue requires attention. In the underlying judgment entry, the trial court required appellant to make "arrangements for payment of the legal fees owed to Buckingham, Doolittle and Burroughs." As already discussed, appellee paid the fees to Buckingham, Doolittle and Burroughs. Thus, the order should have required appellant to make arrangements to reimburse appellee for the fees she previously paid to the firm. We therefore modify the trial court's judgment to reflect that appellant is required to direct payment of the $27,775.26 to appellee, *not* Buckingham, Doolittle and Burroughs.

**{¶48}** Appellant's third assignment of error is overruled.

13

{¶49} For the reasons discussed in this opinion, the Summit County Court of Common Pleas, Domestic Relations Division, is hereby modified and affirmed as modified.


TIMOTHY P. CANNON, P.J.,
Eleventh Appellate District,
Sitting by assignment,

DIANE V. GRENDELL, J.,
Eleventh Appellate District,
Sitting by assignment,

concur.