[Cite as *Petersheim v. Petersheim*, 2017-Ohio-8782.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| | | |
|---|---|---|
| JESSICA PETERSHEIM nka FRY | | C.A. No. 16AP0043 |
| Appellant | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| JOSHUA PETERSHEIM | | COURT OF COMMON PLEAS COUNTY OF WAYNE, OHIO |
| Appellee | | CASE No. 12-DR-0509 |

DECISION AND JOURNAL ENTRY

Dated: December 4, 2017

CARR, Judge.

{¶1} Appellant, Jessica Fry, f.k.a. Jessica Petersheim, appeals the judgment of the Wayne County Court of Common Pleas. This Court reverses and remands.

I.

{¶2} This matter arises out of the divorce of Fry and Joshua Petersheim. Fry filed a complaint for divorce on December 6, 2012. The parties eventually entered into a separation agreement and the trial court issued a judgment entry of divorce with children on February 4, 2014.

{¶3} On June 25, 2015, Petersheim filed a motion for contempt against Fry, alleging that she had willfully and knowingly violated the terms of the separation agreement by failing to make payments on the debt related to her Dodge Durango. Article 5 of the separation agreement, which dealt with the division of personal property, specified that "[Fry] shall have as her own property, free and clear of any claim of [Petersheim], * * * [the] 2006 Dodge Durango titled in

[Petersheim's] name, subject to the indebtedness due to Marine Federal Credit Union. Once the debt is paid in full [Petersheim] shall cooperate with the transfer of the title to [Fry.]" Article 7 of the separation agreement, which addressed "Bills and Obligations," stated that Fry "shall indemnify and hold [Petersheim] harmless" with respect to "[t]he debt payable to Marine Federal Credit Union in [Petersheim's] name[.]" In his contempt motion, Petersheim alleged that Fry's failure to pay off the debt to Marine Federal Credit Union had negatively impacted his credit score and hindered his ability to secure other loans. In addition to seeking a contempt order, Petersheim also asked for an order that refinanced the debt out of his name, in addition to damages and an award of attorney fees.

{¶4} The matter was scheduled for a show cause hearing before a magistrate. Both parties filed briefs prior to the hearing. Fry maintained that she was current on her vehicle payments at the time the contempt motion was filed and that the vehicle was traded in to extinguish the debt in July 2015. Petersheim acknowledged that the debt had since been extinguished, but argued that the trial court should hold Fry in indirect civil contempt. Petersheim argued that assigning fault to Fry might help him to restore his credit score.

{¶5} Multiple witnesses testified at the hearing, including Fry and Petersheim. Fry acknowledged that while she had made payments to Marine Federal Credit Union, she had failed to make all of those payments in a timely fashion. Fry maintained, however, that she was current on her payments at the time the contempt motion was filed. Fry further testified that within a month after Petersheim filed his motion for contempt, she traded in the Dodge Durango in order to extinguish the debt. Petersheim testified that the damage to his credit score as a result of Fry's shoddy payment history had prevented him from securing other vehicle and home loans.

**{¶6}** On March 23, 2016, the magistrate issued a decision finding Fry in civil contempt. While Fry was current on the payments at the time Petersheim filed the motion, the magistrate found that she had consistently been late on payments and missed two payments completely. The magistrate concluded that there was clear and convincing evidence that Fry's failure to make timely payments had negatively impacted Petersheim's credit score and prohibited him from securing other loans, and therefore that Fry had failed to hold Petersheim harmless with regard to the debt in accordance with the separation agreement. With respect to attorney fees, the magistrate found that while the loan was not delinquent at the time Petersheim filed his motion, "[Petersheim] was acting reasonably in assuming [Fry's] pattern of late payments would continue into the future." The magistrate sentenced Fry to three days in jail and ordered her to pay a fine of $250. The magistrate then suspended the jail sentence and fine on the condition that Fry pay Petersheim's attorney fees in the amount of $1350 and pay the court costs associated with the action.

**{¶7}** The trial court issued an order independently adopting the magistrate's decision on the same day that the decision was filed. The trial court imposed the $250 fine and three-day jail sentence and ordered that the sanctions were "suspended on the condition [Fry] pay [] Petersheim's attorney's fees of $1350 and pay the costs of this action by reimbursing [Petersheim] $85 for his payment of the deposit and further by paying the balance of court costs due in this matter." The trial court further scheduled a purge hearing for September 19, 2016, the day upon which Fry was required to pay the attorney fees and costs in full.

**{¶8}** On March 28, 2016, Fry filed a number of objections to the magistrate's decision. Fry subsequently filed a transcript and memorandum in support of her objections. Petersheim

filed a memorandum responding to the objections. On July 6, 2016, the trial court issued a judgment entry overruling Fry's objections to the magistrate's decision.

{¶9} Fry filed a timely notice of appeal. Now before this Court, Fry raises five assignments of error.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT DENIED THE APPELLANT DUE PROCESS OF LAW BY IMPOSING CRIMINAL SANCTIONS UPON HER FOR PAST CONDUCT WHICH THE COURT FOUND TO BE IN CONTEMPT.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED ERROR AS A MATTER [OF] LAW BY IMPOSING CRIMINAL SANCTIONS UPON THE APPELLANT FOR CONDUCT THAT WAS NOT WILLFUL OR INTENDED TO DEFY THE COURT.

{¶10} In her first and second assignments of error, Fry raises an array of challenges to the trial court's contempt order. Fry's central claim that permeates her first two assignments of error is that the trial court violated her due process rights when it imposed criminal contempt sanctions during a civil contempt proceeding. We agree.

{¶11} "What constitutes due process in a contempt proceeding depends to a large extent upon whether the contempt is direct or indirect, and whether it is civil or criminal." *Cincinnati v. Cincinnati Dist. Council 51*, 35 Ohio St.2d 197, 202 (1973). Direct contempt is disrespectful behavior that occurs in the presence of the court, or near the presence of the court, and disrupts the administration of justice. *Forrer v. Buckeye Speedway, Inc.*, 9th Dist. Wayne No. 07CA0027, 2008-Ohio-4770, ¶ 14. Indirect contempt, on the other hand, occurs outside the presence of the court. Id.

**{¶12}** "Regardless of whether a particular contempt is direct or indirect, the sanctions imposed based on that contempt may be either criminal or civil." *Id.* at ¶ 15. "While both types of contempt contain an element of punishment, courts distinguish criminal and civil contempt not on the basis of punishment, but rather, by the character and purpose of the punishment." *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253 (1980). "If the primary purpose of the sanction is to punish the defendant for a completed violation of a court's order, it is a criminal sanction. If the primary purpose of the sanction is to benefit the plaintiff, it is a civil sanction." (Internal citations omitted.) *Forrer* at ¶ 15.

> If sanctions are primarily designed to benefit the complainant through remedial or coercive means, then the contempt proceeding is civil. Remedial civil contempts serve to compensate plaintiffs for damages suffered because of the defendant's disobedience of a court order. The plaintiff must prove [his or] her loss as [he or] she would in any legal action for damages. Coercive civil sanctions are imposed when the defendant is engaged in an ongoing violation of a court's order. [Their] purpose * * * is to induce the defendant to stop the ongoing contemptuous behavior. Defendants imprisoned under a coercive civil sanction are said to carry the keys to [their] prison in [their] own pocket. As soon as they purge the contempt by stopping the ongoing violation, they are released. Criminal contempt, on the other hand, is usually characterized by an unconditional prison sentence or fine. Its sanctions are punitive in nature, designed to vindicate the authority of the court.

(Internal citations and quotations omitted.) *Harvey v. Harvey*, 9th Dist. Wayne Nos. 09CA0052, 09CA0054, 2010-Ohio-4170, ¶ 5.

**{¶13}** This Court has observed that "[a]lthough contempt proceedings are neither civil nor criminal, we must clarify the sanctions order by the trial court as either 'civil' or 'criminal' to determine whether it provided due process." Id., citing *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 16 (1988); *Cincinnati Dist. Council 51*, 35 Ohio St.2d at 202. "[I]f [the contempt] is civil, then the offending party is entitled to only those due process protections afforded parties in civil actions, whereas, if it is criminal, the party is entitled to the due process

protections normally afforded defendants in criminal actions." *Doerfler v. Doerfler*, 9th Dist. Wayne No. 06CA0021, 2006-Ohio-6960, ¶ 16.

DISCUSSION

**{¶14}** At the outset of the hearing before the magistrate, Fry's attorney sought clarification regarding the nature of the proceeding, given that Petersheim seemed to be asking for criminal sanctions. Petersheim's attorney responded in the negative and stated that "the intent is that it would be a civil contempt." The matter proceeded with the understanding that Petersheim was seeking civil contempt sanctions.

**{¶15}** The evidence presented at the hearing demonstrated that Fry was current on the payments at the time the contempt motion was filed. The evidence further showed that Fry had traded in the vehicle in question prior to the contempt hearing in order to extinguish the debt. Petersheim took the stand and explained that Fry's issues with the payments had prohibited him from obtaining other loans. The magistrate found that there was "clear and convincing evidence that [Fry] failed to hold [Petersheim] harmless with regard to the Marine Federal Credit Debt and is therefore in civil contempt." This finding was predicated on the fact that Fry's failure to make timely payments negatively impacted Petersheim's credit score and hindered his ability to secure other loans. The magistrate's decision stated that Fry was "sentenced" to the three-day jail term and a fine, which were suspended on the condition that she pay Petersheim's attorney fees and other costs. As noted above, the trial court independently adopted the magistrate's decision, including the sanctions which included a sentence of three days in jail and a $250 fine. The trial court suspended the sentence on the condition that Fry pay Petersheim $1350 in attorney fees, $85 for his payment of the deposit, as well as the balance of the court costs. The trial court

further ordered that the attorney fees and costs would be paid by September 19, 2016. The trial court set a purge hearing for that date.

{¶16} The contempt sanctions levied against Fry were not coercive sanctions intended to bring her into compliance with the separation agreement. Nor were the sanctions tailored to serve a remedial purpose by making Petersheim whole for the damage done to his credit score, regardless of whether the sanctions were suspended provided that she comply with certain conditions. Instead, the contempt sanctions were intended solely to punish Fry for completed violations of the separation agreement. As such, the fine and jail sentence were criminal contempt sanctions. *See Forrer* at ¶ 22; *Estate of Harrold v. Collier*, 9th Dist. Wayne Nos. 07CA0074, 08CA0024, 2009-Ohio-2782, ¶ 14.

{¶17} By imposing criminal contempt sanctions, the trial court violated Fry's due process rights. This Court has observed that "[a] trial court cannot impose criminal contempt sanctions on a defendant unless it has afforded the defendant rights and privileges required in a criminal proceeding." *Forrer* at ¶ 23. "'Without deciding what may be the rule in civil contempt, it is certain that in proceedings for criminal contempt the defendant is presumed to be innocent, he [or she] must be proved to be guilty beyond a reasonable doubt, and cannot be compelled to testify against [him or her]self.'" *Forrer* at ¶ 23, quoting *Gompers v. Buck's Stove and Range Co.*, 221 U.S. 418, 444 (1911). The contemnor also has a right to proper notice of a criminal contempt hearing. *Doerfler* at ¶ 18. In this case, Fry inquired about the nature of the hearing and was told that it was a civil contempt proceeding. Fry was the first witness to testify at the hearing when she was cross-examined by Petersheim's attorney. Furthermore, the trial court utilized a clear and convincing standard when it determined that Fry was in contempt.

Under these circumstances, Fry's due process rights were violated when the trial court ultimately imposed criminal contempt sanctions.

**{¶18}** Fry's first and second assignments of error are sustained.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED ERROR IN ITS ORDER BY FAILING TO APPLY THE HOLDING OF WYSOCKI V. WYSOCKI, 65 OHIO LAW ABS 156 (151) WHICH PROVIDES THAT WHEN A PARTY IS UNABLE TO COMPLY WITH A COURT ORDER AT THE TIME THEY ARE FOUND GUILTY OF CONTEMPT, THE CHARGE OF CONTEMPT SHOULD BE DISMISSED EVEN THOUGH THAT PARTY MAY HAVE BEEN ABLE TO COMPLY WITH THE ORDER AT THE TIME IT WAS ENTERED OR WHEN THAT PARTY WAS FIRST CHARGED WITH CONTEMPT.

### ASSIGNMENT OF ERROR IV

IN THE ALTERNATIVE, THE TRIAL COURT ERRORED (SIC) IN FINDING THE APPELLANT IN CIVIL CONTEMPT BECAUSE (1) SHE WAS FULLY COMPLIANT WITH THE COURT'S ORDER AT THE TIME THE DEFENDANT FILED HIS MOTION FOR CONTEMPT AND THE COURT ISSUED A SHOW CAUSE ORDER; AND (2) THE UNDERLYING OBLIGATION WHICH WAS THE BASIS FOR THE CONTEMPT HAD BEEN FULLY SATISFIED BY THE APPELLANT WITHIN 50 DAYS FROM WHEN THE DEFENDANT ASKED THAT THE APPELLANT BE FOUND IN CONTEMPT.

### ASSIGNMENT OF ERROR V

THE MAGISTRATE'S DECISION IMPOSING PAYMENT OF ATTORNEY FEES BY THE PLAINTIFF OF $1350 IS EXCESSIVE AND AN ABUSE OF DISCRETON.

**{¶19}** Fry raises three additional challenges to the trial court's contempt order. As our resolution of Fry's first and second assignments of error is dispositive of this appeal, we decline to address the third, fourth, and fifth assignments of error as they have been rendered moot. *See* App.R. 12(A)(1)(c).

### III.

**{¶20}** Fry's first and second assignments of error are sustained. We decline to address the third, fourth, and fifth assignments of error as they have been rendered moot. The judgment of the Wayne County Court of Common Pleas is reversed and the cause is remanded for further proceedings consistent with this decision.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

R.J. HELMUTH, Attorney at Law, for Appellant.

ROSANNE K. SHRINER, Attorney at Law, for Appellee.