[Cite as *State v. Flesch*, 2019-Ohio-1039.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No. 17CA011175 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| T.F. | COURT OF COMMON PLEAS |
| Defendant | COUNTY OF LORAIN, OHIO CASE No. 16CR093398 |
| and | |
| FREDERICK FLESCH | |
| Appellant | |

DECISION AND JOURNAL ENTRY

Dated: March 25, 2019

TEODOSIO, Presiding Judge.

**{¶1}** Appellant, Frederick Flesch, appeals from the trial court's judgment order sentencing him for direct contempt in the Lorain County Court of Common Pleas. This Court reverses and remands.

I.

**{¶2}** Mr. Flesch was a juror in T.F.'s criminal case in the Lorain County Court of Common Pleas. Throughout the proceedings, the court repeatedly admonished the jury to avoid reading outside information such as newspapers and the internet, and discussed the issue of contempt. During jury deliberations, some jurors informed the court's bailiff that Mr. Flesch had brought a newspaper article about T.F.'s case into the jury room and discussed it with the jury. The court brought Mr. Flesch into the courtroom and inquired of him on the record as to the

allegations. He admitted to "skimming" the article, but recalled certain facts from it such as T.F.'s name and a woman screaming in the bathroom. He further admitted that he brought the article into the jury room and asked his fellow jurors if the woman had screamed. When they responded in the affirmative, he brought the article out and asked if that particular information should be in the newspaper while they were deliberating. The court instructed him to return to the jury room. Next, the court inquired of four other jurors individually on the record and they all told the court a similar story as to the newspaper incident in the jury room.

{¶3} The trial court ordered a mistrial in T.F.'s case and found Mr. Flesch guilty of direct contempt. At a later date, the court sentenced Mr. Flesch to 30 days in jail and ordered him to pay a $250.00 fine and court costs. The court suspended 23 days in jail and $100.00 of the fine under the conditions that Mr. Flesch maintain good behavior for one year and pay fines and costs, including jury costs in the amount of $1,525.00.

{¶4} Mr. Flesch now appeals from the trial court's judgment order. He raises three assignments of error for this Court's review.

II.

## ASSIGNMENT OF ERROR ONE

THE COURT ERRED IN DEPRIVING THE JUROR OF HIS DUE PROCESS RIGHT[S] TO NOTICE, COUNSEL, AND A HEARING ON AN INDIRECT CONTEMPT CHARGE.

{¶5} In his first assignment of error, Mr. Flesch argues that the trial court erred in depriving him of his due process rights to notice, counsel, and a hearing before finding him guilty of contempt. We agree.

{¶6} "R.C. 2705.09 specifically affords appellate review for contempt orders." *State ex rel. Tilford v. Crush*, 39 Ohio St.3d 174, 177 (1988). This Court reviews contempt

proceedings under an abuse of discretion standard. *Weaver v. Weaver*, 9th Dist. Wayne No. 15AP0015, 2016-Ohio-1356, ¶ 9. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying an abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶7} Contempt of court may be generally defined as disobedience of a court order or conduct that brings the administration of justice into disrespect or impedes a court's ability to perform its functions. *Freeman v. Freeman*, 9th Dist. Wayne No. 07CA0036, 2007-Ohio-6400, ¶ 45. *See also* R.C. 2705.02. Contempt proceedings are regarded as sui generis, neither wholly civil nor wholly criminal actions. *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253 (1980). "It is well-established that an alleged contemnor must be afforded due process." *Edminister v. Edminister*, 9th Dist. Summit No. 25428, 2011-Ohio-1899, ¶ 10. "'What constitutes due process in a contempt proceeding depends to a large extent upon whether the contempt is direct or indirect, and whether it is civil or criminal.'" *Petersheim v. Petersheim*, 9th Dist. Wayne No. 16AP0043, 2017-Ohio-8782, ¶ 11, quoting *Cincinnati v. Cincinnati Dist. Council 51*, 35 Ohio St.2d 197, 202 (1973).

{¶8} Contempt may be classified as either civil or criminal, depending on the character and purpose of the contempt sanctions. *State v. Nelson*, 9th Dist. Lorain No. 03CA008242, 2003-Ohio-3922, ¶ 7. "'If sanctions are primarily designed to benefit the complainant through remedial or coercive means, then the contempt proceeding is civil.'" *Harvey v. Harvey*, 9th Dist. Wayne Nos. 09CA0052 and 09CA0054, 2010-Ohio-4170, ¶ 5, quoting *Denovchek v. Bd. of Trumbull Cty. Commr.*, 36 Ohio St.3d 14, 16 (1988). "Criminal contempt involves offenses

against the process of the court and its sanctions therefore are punitive in nature." *Nelson* at ¶ 7. "'[I]f [the contempt] is civil, then the offending party is entitled to only those due process protections afforded parties in civil actions, whereas, if it is criminal, the party is entitled to the due process protections normally afforded defendants in criminal actions.'" *Petersheim* at ¶ 13, quoting *Doerfler v. Doerfler*, 9th Dist. Wayne No. 06CA0021, 2006-Ohio-6960, ¶ 16. Criminal contempt must be proven beyond a reasonable doubt, and "[t]he court must consider the totality of the circumstances and ascertain whether the contemnor had the intent to obstruct the administration of justice or disobey an order of the court." *Nelson* at ¶ 7. The contemnor is presumed innocent and cannot be compelled to testify against him or herself. *Petersheim* at ¶ 17. Here, the parties do not dispute that Mr. Flesch was convicted of criminal contempt. The sanctions imposed were not remedial or coercive sanctions intended to bring Mr. Flesch into compliance with the court's order, but were instead punitive sanctions intended solely to punish him for violating the court's order. *See Petersheim* at ¶ 16.

{¶9} Additionally, "[c]ontempt is either direct or indirect, depending on where it happens." *Forrer v. Buckeye Speedway, Inc.*, 9th Dist. Wayne No. 07CA0027, 2008-Ohio-4770, ¶ 14. Indirect contempt occurs outside the presence of the court. *Petersheim* at ¶ 11. *See also State v. Bilder*, 9th Dist. Summit No. 15139, 1992 WL 74212, *3 (Apr. 8, 1992) (stating indirect contempt is misbehavior, committed outside the presence of the court, that tends to obstruct the due and orderly administration of justice.) Contrarily, "[d]irect contempt is disrespectful behavior that occurs in the presence of the court, *or near the presence of the court*, and disrupts the administration of justice." (Emphasis added.) *Petersheim* at ¶ 11. *See also Bilder* at *3 (defining direct contempt as requiring immediate punishment to preserve the court's authority, taking place in the presence of the judge in open court or in or before any of its constituent parts,

such as the court room or jury, and obstructing the administration of justice by delaying or hindering or influencing a pending case.); R.C. 2705.01.

{¶10} It is clear from the record that the trial court found Mr. Flesch guilty of direct contempt. The parties do not dispute the fact that the incident did not occur in the actual presence of the judge, but instead occurred inside the jury room during deliberations. However, Mr. Flesch first argues that because the incident occurred outside the presence of the court, his conduct could only have constituted indirect contempt. The State contends that the trial court correctly found Mr. Flesch guilty of direct contempt because the incident occurred in the jury room during deliberations and resulted in a mistrial, thus, it occurred sufficiently near the court and disrupted the administration of the court. We agree with the State and conclude that because Mr. Flesch's actions occurred in the jury room during deliberations, such conduct occurred near the presence of the court and disrupted the administration of justice, and therefore the trial court did not err in classifying Mr. Flesch's conduct as direct contempt. *See Petersheim* at ¶ 11; *Bilder* at *3.

{¶11} Mr. Flesch also argues that the trial court erred in failing to afford him notice of a hearing, an opportunity to be heard, the ability to confront or cross-examine witnesses, and the right to counsel. The State contends that because Mr. Flesch's actions constituted direct contempt, the trial court could properly deal with the matter summarily under R.C. 2705.01, and thus written charges, notice of a hearing, the appointment of counsel, and the cross-examination of witnesses were not required.

{¶12} Direct contempt is further classified as either occurring in the actual presence of the judge or in the constructive presence of the court. *Thompson v. Thompson*, 9th Dist. Lorain No. 00CA007747, 2001 WL 948715, *1 (Aug. 22, 2001). When contemptuous conduct occurs

in the actual presence of the judge, direct contempt may be dealt with summarily, without a written charge or a hearing, as the judge is acting on his or her personal knowledge of all the facts. *Id. See also* R.C. 2705.01 ("A court, or judge at chambers, may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice"); *In re Neff*, 20 Ohio App.2d 213 (5th Dist.1969), paragraph four of the syllabus (stating that when contempt occurs in the presence of the judge, the contemnor waives his due process rights by voluntarily placing the evidence directly before the court, effectively depriving the court of any opportunity to advise the contemnor of his rights.).

{¶13} A summary proceeding under R.C. 2705.01 is not authorized, however, simply because the contemnor's conduct constitutes direct contempt, but only when there is a need to immediately vindicate the court's authority and restore order to the proceedings before the court. *See In re Wingrove*, 4th Dist. Washington No. 02CA4, 2003 WL 246079, *5 (Jan. 21, 2003). "[F]or a court to exercise the extraordinary but narrowly limited power to punish for contempt without adequate notice and opportunity to be heard, the court-disturbing misconduct must not only occur in the court's immediate presence, but [] the judge must have personal knowledge of it acquired by his own observation of the contemptuous conduct." *In re Oliver*, 333 U.S. 257, 274-275 (1948), citing *Cooke v. United States*, 267 U.S. 517 (1925). "[K]nowledge acquired from the testimony of others, or even from the confession of the accused, would not justify conviction without a trial in which there was an opportunity for defense." *Id.* at 275. Consequently, when contemptuous conduct occurs only in the court's constructive presence, and the judge does not have personal knowledge of it acquired by his own observations:

> [D]ue process of law * * * requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses [on] his behalf, either by way of

defense or explanation. The narrow exception to these due process requirements includes only charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent "demoralization of the court's authority" before the public. If some essential elements of the offense are not personally observed by the judge, so that he must depend upon statements made by others for his knowledge about these essential elements, due process requires, according to the *Cooke* case, that the accused be accorded notice and a fair hearing as above set out.

*Id.* at 275-276. For direct contempt proceedings that require the taking of testimony, such notice may be informally given, provided the court advises the accused of the object of the hearing in accord with due process of law. *Neff* at paragraph ten of the syllabus. It is not sufficient that the contemnor learns from the terms of the resulting judgment, as such knowledge comes too late. *Id.*

{¶14} We respectfully disagree with the dissent's suggestion that we should ignore the well-settled distinction between the two types of direct contempt because Mr. Flesch "makes no mention" of it in his merit brief. As noted above, Mr. Flesch argues that his actions constituted *indirect* contempt and, as such, he could not earnestly be expected to distinguish between indirect contempt that occurs in the "actual presence of the judge" or "constructive presence of the court" in his brief when no such distinction exists. Nevertheless, although his overall classification of the contempt in this case is inaccurate, Mr. Flesch cites to case law regarding contempt proceedings wherein "the acts are not within the personal knowledge of the judge" and the "court has not personally observed the essential elements of the contempt and must depend on the statements of others for knowledge of the essential elements," while explicitly arguing in his brief that "the [j]udge did not have personal knowledge and he instead elicited the information from the jurors and Mr. Flesch himself." This language certainly contemplates the distinction between contempt occurring in the actual presence of the judge or the constructive

presence of the court, and we have therefore not exceeded the scope of our review in addressing the arguments contained within Mr. Flesch's brief.

{¶15} Here, although the alleged conduct could be properly classified as direct contempt, the incident only occurred in the constructive presence of the court, and therefore summary proceedings under R.C. 2705.01 were not appropriate. A review of the record shows that, prior to finding Mr. Flesch guilty of contempt, the trial court did not provide him with notice of a contempt charge against him, did not afford him the right to counsel, and did not hold a hearing affording him the opportunity to be heard and to cross-examine witnesses. Therefore, we can only conclude that Mr. Flesch's due process rights were violated and, consequently, that the trial court abused its discretion and erred in imposing criminal contempt sanctions. *See Petersheim* at ¶ 17. The dissent focuses on the general relationship between the trial court and a jury to support its conclusion that a trial court judge should have the authority to summarily punish juror conduct he has not personally observed, but the law simply does not support such a conclusion. Where direct criminal contempt occurs not in the actual presence of the trial court judge but only in the constructive presence of the court, the alleged contemnor must be afforded due process, including the right to notice of the contempt charge, the right to counsel, and the right to a hearing affording him the opportunity to be heard and to cross-examine witnesses. *See Oliver* at 275-276. To hold otherwise would not only run afoul of United States Supreme Court precedent, but could lead to grave consequences whereby jurors are denied basic constitutional rights and are unjustly incarcerated simply because they are jurors in the midst of performing, sometimes unwillingly, a paramount and necessary civic duty in our society.

{¶16} Accordingly, Mr. Flesch's first assignment of error is sustained.

## ASSIGNMENT OF ERROR TWO

THE COURT ERRED IN FORCING THE JUROR TO TESTIFY AGAINST HIMSELF IN A CRIMINAL CONTEMPT.

## ASSIGNMENT OF ERROR THREE

THE COURT ERRED IN FINDING CRIMINAL CONTEMPT WHEN THERE WAS REASONABLE DOUBT AND AGAINST THE MANIFEST WEIGHT OF EVIDENCE.

{¶17}  Mr. Flesch raises two additional challenges to the trial court's contempt order.  As our resolution of his first assignment of error is dispositive of this appeal, we decline to address his second and third assignments of error as they have been rendered moot.  *See* App.R. 12(A)(1)(c).

### III.

{¶18}  Mr. Flesch's first assignment of error is sustained.  We decline to address his second and third assignments of error as they have been rendered moot.  The judgment of the Lorain County Court of Common Pleas is reversed and the cause is remanded for further proceedings consistent with this decision.

Judgment reversed,
and cause remanded.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
THOMAS A. TEODOSIO
FOR THE COURT

HENSAL, J.
CONCURS.

CARR, J.
DISSENTING.

{¶19} I respectfully dissent as I believe that distinguishing juror misconduct of this nature from misconduct that occurs in the actual presence of the trial court frustrates the trial court's ability to preserve the integrity of a criminal proceeding and protect the rights of the accused. Moreover, I believe this Court has exceeded the scope of its review. Flesch does not make the argument that the majority addresses and upon which it ultimately bases its decision. Flesch makes no mention of the distinction between juror misconduct that occurs in the actual presence of the court as opposed to the constructive presence of the court. Instead, he merely asserts in his assignment of error that his conduct in this matter should be classified as indirect contempt.

{¶20} The unfortunate circumstances of this case placed the trial court in a precarious position. The trial judge was forced to walk a tightrope while juggling the rights and interests of the accused, the offending juror, the State, and society at large.

**{¶21}** There is no question that jurors play a vital role in the American judicial system. But they do so under the control of the trial court. The Handbook for Trial Jurors Serving in the United States District Courts summarizes this close relationship: "The judge determines the law to be applied in the case while the jury decides the facts. Thus, in a very important way, jurors become part of the court itself." Available at http://www.vaed.uscourts.gov/jury/jurortrialhandbook.pdf (accessed March 5, 2019). In Ohio, jurors in criminal cases take an oath to carefully deliberate all matters before the court to the best of their skill and understanding, and to do so without prejudice or bias. R.C. 2945.28(A). Let there be no doubt- Flesch, by his own admission and the testimony of four other jurors, failed to keep his oath.

**{¶22}** Of course, the role of jurors springs forth from a criminal defendant's fundamental right to a fair and impartial jury as guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 5 of the Ohio Constitution. As Justice Brennan observed, "[t]he right to a fair trial by a jury of one's peers is unquestionably one of the most precious and sacred safeguards enshrined in the Bill of Rights." *Neb. Press Assn. v. Stuart*, 427 U.S. 539, 572 (1976) (Brennan, J., concurring in the judgment). Upon learning of juror misconduct, the trial court's foremost concern must be to protect the rights of the accused. Moreover, "[t]he State and the public have a significant interest in the integrity of the judicial process and that interest must impact the mistrial decision." *State v. Ross*, 9th Dist. Summit No. 20980, 2002-Ohio-7317, ¶ 33. In order to determine whether there is a manifest necessity to declare a mistrial, the trial court, upon learning of potential juror misconduct, must immediately voir dire the jury so that it can properly balance "the defendant's right to have the charges decided by a particular tribunal * * * against society's interest in the efficient dispatch of

justice." *Ross* at ¶ 23, quoting *State v. Glover*, 35 Ohio St.3d 18, 19 (1988). "A jury tainted with outside information and a juror who refuses to deliberate in good faith implicates not only the defendant's right but also the public's interest in the integrity of the judicial process." *Ross* at ¶ 33,

{¶23} All of the competing interests that a trial court must balance collided in this case when Flesch defied the trial court's instructions and corrupted jury deliberations. The trial court specifically instructed the jury to avoid reading the newspaper. The trial court further warned the jurors that they could be held in contempt for disobeying jury instructions. Despite being on notice that he could not introduce outside materials during deliberations, Flesch brought a newspaper article about the case into the jury room and discussed its contents. Several jurors, pursuant to their oath, notified the bailiff of their fellow juror's misconduct. The trial court immediately took measures to find out what occurred. Flesch admitted to the trial court that he discussed the article with his fellow jurors. Four other jurors told the trial court about Flesch's misconduct in the jury room during deliberations.

{¶24} Flesch's actions took place in the jury room, during the course of deliberations. This conduct constituted direct contempt. Under these circumstances, it is critical that a trial court, through its contempt powers, possesses the ability to expeditiously vindicate the rights of the accused, maintain the public's interest in the integrity of the judicial process, and, through its contempt power, to punish the offending juror.

{¶25} While the majority couches its discussion in terms of juror misconduct that only occurred in the constructive presence of the trial court, as opposed to the actual presence of the judge, I would guard against applying the concept of constructive presence to circumstances such as this where the entire jury was, by law, under the immediate control of the trial court when the

juror engaged in misconduct. When a case is submitted to the jurors, the jurors are to be kept together under the supervision of an officer until the court releases them. R.C. 2945.33. The relationship between the trial court and jury during deliberations is so close that it is protected from disruption by the Revised Code. If the trial court's officer who supervises the jury engages in or permits improper communication with the jury, the officer can be imprisoned for one to ten years. R.C. 2945.32.

{¶26} Though the majority relies on *In re Oliver*, 333 U.S. 257 (1948), a case with a very unique set of facts,[1] the instant case involves a much more conventional scenario where the trial court had a pressing need to protect the integrity of the jury, ensure a fair trial for the accused, and vindicate the court's authority. Under these circumstances, where a juror acting as an arm of the court deliberately undermined the jury deliberations, the trial court should have authority to engage in summary contempt proceedings.

{¶27} In light of the foregoing, I respectfully dissent.

APPEARANCES:

DANIEL C. KULIK and GEOGGREY L. OGLESBY, Attorneys at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and MATTHEW A. KERN, Assistant Prosecuting Attorney, for Appellee.

---

[1] In *Oliver*, a judge who was serving as a "one-man grand jury" decided to summarily jail a grand jury witness for contempt upon concluding that the witness's testimony was not credible. *Id.* at 258-259.